# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | § | |
| CHRISTOPHER FREY, | § | |
| | § | |
| Plaintiff/Relator, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-0920-B |
| | § | |
| HEALTH MANAGEMENT SYSTEMS, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Health Management Solutions, Inc. ("HMS")'s Consolidated

Motion to Dismiss (Doc. 24) Relator Christopher Frey's Amended Complaints in 19-cv-00920

("Medicaid Case"), Doc. 19, and 19-cv-1141 ("VA/DOD Case"), Doc. 21.[1] At issue here is whether

Relator satisfied the pleading requirements for his indirect reverse false claims. For the following

reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion.

## I.

## BACKGROUND[2]

### A.    *Factual Background*

This is a consolidated proceeding with claims pursuant to the False Claims Act ("FCA") for

Defendant HMS's failure to reimburse the federal government. *See* Medicaid Doc. 19, Am. Compl.;

---

[1] The Court hereafter cites to documents filed in each case as "Medicaid Doc." and "VA/DOD Doc.", referencing the document numbers generated for each by the Court's electronic filing system.

[2] The facts are taken from the account of the Relator as alleged in the Amended Complaints.

VA/DOD Doc. 21, Am. Compl. HMS provides third party liability ("TPL") services to many state Medicaid agencies and Medicaid Managed Care Organizations ("MCOs") of the Plaintiff States. Medicaid Doc. 19, Am. Compl., ¶¶ 1–2. These services include identifying and recovering expenditures from responsible third party insurers. *Id.* Relator Christopher Frey ("Relator") worked for "HMS from approximately September 2006 to May 2013" and before that for a TPL company that HMS later acquired. *Id.* ¶ 4. Relator was a Vice President or Regional Vice President during most of his employment with HMS and was responsible for managing client relations with several state agencies. *Id.* ¶ 5. Relator alleges that HMS has TPL contracts with at least forty state Medicaid agencies and MCOs, *id.* ¶¶ 3, 40, the Department of Veterans Affairs ("VA") and the Department of Defense ("DOD"). VA/DOD Doc. 21, Am. Compl., ¶¶ 3, 16.

During his time with HMS, Relator alleges that he became aware of "HMS's failure to bill TPL claims timely or at all" and its failure to upload "third party coverage information for Medicaid enrollees [into] the Medicaid information systems." Medicaid Doc. 19, Am. Compl., ¶ 7. Crucially, Medicaid is a "payer of last resort," meaning third party insurers must pay their claims before Medicaid pays the claims. *Id.* ¶ 37. Furthermore, Medicaid regulations require an agency to seek "reimbursement within 60 days after the end of the month it learns of the [third party liability]." 42 C.F.R. § 433.139(d)(2); Medicaid Doc. 19, Am. Compl., ¶ 39. Relator alleges the failure to timely bill decreased the amount collected by Plaintiff States. Medicaid Doc. 19, Am. Compl., ¶¶ 7, 42. This in turn decreased the refund owed by the States to the federal government, totaling millions or billions of dollars. *Id.*

Under VA or DOD healthcare plans, a third party insurance provider must reimburse the federal government for covered healthcare expenses. VA/DOD Doc. 19, Am. Compl., ¶ 15. "[T]he

United States has the right to recover or collect [reimbursements] from a third party." 38 U.S.C. § 1729(a)(1); 10 U.S.C. § 1095; *see* 38 C.F.R. § 17.106(a)(1) ("VA has the right to recover or collect reasonable charges from a third-party payer for medical care and services provided for a nonservice-connected disability . . . ."); *see also* 32 C.F.R. § 199.12 ("10 U.S.C. §1095b establishes the statutory obligation of third-party payers to reimburse the United States the costs incurred on behalf of TRICARE beneficiaries who are also covered by the third-party payer's plan."); 32 C.F.R. § 199.8 ("Congress clearly has intended that TRICARE be the secondary payer to all health benefit, insurance and third-party payer plans."). Relator alleges that these laws establish a legal obligation for insurance companies to reimburse the federal government for healthcare expenses. VA/DOD Doc. 19, Am. Compl., ¶¶ 24–25. To maximize the Government's reimbursement, a TPL service provider should consistently mine databases of insurance coverage to identify third party insurers and subsequently bill these insurers for reimbursements. *Id.* ¶¶ 26–27. The statute of limitations to recover one of these claims is three years for a DOD claim, 32 C.F.R. § 199.11; 28 U.S.C. § 2415(b), and up to six years for a VA claim. 38 U.S.C. § 1729(b)(2)(C).

According to Relator, HMS's failure to timely bill resulted from "an overwhelming volume of claims[,]" inadequate computer systems, "a lack of competition[,]" "a desire to curry favor with insurance carriers[,]" and big business arrogance. Medicaid Doc. 19, Am. Compl., ¶ 43. HMS's obsolete computer systems resulted in claims being put "on hold," leading to "buckets" of claims—worth possibly millions of dollars—never being billed. *Id.* ¶ 45. States rarely received notice of these holds because these holds typically occurred after the billing cycle, resulting in "inaccurate and fraudulent reports" that represented claims—subsequently made subject to carrier holds—had gone out. *Id.* ¶¶ 48, 51. Nor did HMS later update the States with the true status of the claims. *Id.*

¶ 54. HMS also allegedly failed to follow up with carriers to obtain payment, appeal denials, and provide the additional information requested by carriers to complete reimbursements. *Id.* ¶¶ 52–53. Relator also re-alleges these same actions in the VA/DOD complaint almost verbatim. *See* VA/DOD Doc. 21, Am. Compl., ¶¶ 30–38.

Relator makes specific allegations as to HMS's failures relating to the states discussed below. Regarding the State of Florida, Relator alleges one specific example of HMS failing to timely bill claims or to bill at all. Medicaid Doc. 19, Am. Compl., ¶¶ 49–50. Relator states that when HMS learned a new contract for the State fo Florida went to a competitor, HMS suddenly billed a large amount of claims totaling around $100 million. *Id.* This example demonstrates HMS's lack of diligence, according to Relator. *Id.* ¶ 50.

Regarding the State of New York, Relator alleges thousands of claims were placed "on hold" until the claims were unrecoverable, costing the State nearly $179 million. *Id.* ¶ 47. HMS also failed to refund several "add" fees in violation of state and federal law. *Id.* ¶ 8. Under a typical contract, HMS will receive a contingency fee in relation to the amount recovered for the state, but in New York HMS received an additional $40 "add" fee for "identif[ying] a Medicaid patient with newly discovered other coverage." *Id.* ¶¶ 41, 64. Until early 2009, HMS's contract with New York required HMS to refund the "add" fee if HMS obtained a recovery because HMS kept a percentage of the recovery. *Id.* ¶ 64. This avoided double payments. *Id.* But, Relator believes "HMS routinely and knowingly failed to refund the add fee" under this contract. *Id.* This caused many of the reports provided to New York to contain false or inaccurate information. *Id.* ¶ 65. After early 2009, the new contract did not contain the refund requirement, but this did not extinguish the existing obligation of HMS to refund the collected add fees. *Id.* ¶ 66. HMS's failure to refund the add fees impaired the

obligation of New York to reimburse the federal government.

Regarding Tennessee, Relator describes a "Tennessee Model" of double billing Medicaid agencies for providing them the same TPL information. *Id.* ¶ 69. The State of Tennessee relies 100% on MCOs to run its Medicaid program. *Id.* ¶ 71. Relator claims HMS sells the TPL information to both the state Medicaid agency and the individual MCOs despite the state agency providing the same TPL information to the MCOs. *Id.* ¶ 69. Plaintiff alleges the "Tennessee Model" impairs the State's obligation to the federal government. *Id.* ¶ 73.

Finally, Relator contends HMS failed to upload insurance coverage information into the Medicaid Management Information System ("MMIS") within 45 days as required by federal regulation. *Id.* ¶¶ 57–60. HMS's failure to upload this information "concealed, avoided and decreased its obligations . . . to obtain recoveries for the Plaintiff states," which in turn impaired the States obligation to the federal government. *Id.* ¶ 62.

Relator states that he raised his concerns throughout his employment to senior management including the Executive Vice President, Executive Vice President and Chief Business Officer, Vice President of Operations, Senior Vice President, Vice President, and COO. *Id.* ¶¶ 55, 74–87. Relator soon realized that senior management never acted to fix the problems he identified. *Id.* ¶ 78. In the 2010 Strategic Plan made by Relator, he once again tried to bring the issues to the attention of senior management. *Id.* ¶ 79. Relator recommended timely transmitting all billings, rebilling open claims older than three months, not holding claims in the "open" status, resolving issues with TRICARE recovery, and reviewing the "cycle edit" process to reduce the number of claims "cleaned" from the system. *Id.* ¶¶ 80–83. Relator repeats these allegations of informing HMS senior management of these failures in the VA/DOD Complaint. VA/DOD Doc. 21, Am. Compl., ¶¶ 39–54.

B.    *Procedural Background*

Relator filed the Medicaid Complaint (Doc. 2) on April 16, 2019, and the VA/DOD Complaint (Doc. 2) on May 13, 2019. The Government filed a Declination Notice (Medicaid Doc. 14; VA/DOD Doc. 16) on December 9, 2020, declining to intervene in either case. On January 12, 2021, Relator filed an Amended Complaint (Medicaid Doc. 19; VA/DOD Doc. 21) in both cases. HMS filed an Unopposed Motion to Transfer (VA/DOD Doc. 24) the VA/DOD case to this Court on February 15, 2021, and that court granted the motion (VA/DOD Doc. 25) on February 22, 2021. HMS then filed an Unopposed Motion to Consolidate Cases (Medicaid Doc. 22; VA/DOD Doc. 26) on March 11, 2021, which the Court granted (Medicaid Doc. 23; VA/DOD Doc. 27) on March 15, 2021. On April 1, 2021, HMS filed a Motion to Dismiss (Medicaid Doc. 24). Relator filed his Response to the Motion to Dismiss (Medicaid Doc. 28) on June 1, 2021. The Government filed a Statement of Interest (Medicaid Doc. 32) in regard to the Motion to Dismiss on June 9, 2021. On July 1, 2021, HMS filed their Reply (Medicaid Doc. 33). The motion is now ripe and the Court considers it below.

## II.

## LEGAL STANDARDS

A.    *Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

In order to survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.      *Rule 9(b)*

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When claims for fraud and negligent misrepresentation are based on the same set of alleged facts, Rule 9(b)'s heightened pleading standard applies. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003)); *see Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *8 (N.D. Tex. Dec. 14, 2010) (applying Rule 9(b) to fraud and negligent misrepresentation claims that arose out of the same set of facts but were

contained in separate counts in the complaint).

As a fraud statute, an FCA claim must comply with Rule 9(b) which requires "stating with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elecs.*, 343 F.3d at 724; *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context specific"). A traditional fraud claim requires pleading with particularity the "'who, what, when, where, and how' of the alleged fraud." *United States ex. rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. App'x. 890, 892 (5th Cir. 2013) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). But "the [common law fraud] standard is not a straitjacket for Rule 9(b)" as "Rule 9(b) is 'context specific and flexible.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). "[T]o plead with particularity the circumstances constituting fraud for a False Claims Act . . . claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* Thus, the standard for pleading fraud under the FCA rests somewhere between the standard pleading requirements under Rule 8 and the traditional Rule 9(b) standard. *Nunnally*, 519 F. App'x. at 893 n.3.

## III.

## ANALYSIS

The purpose of the FCA is "to discourage fraud against the government." *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). Relator raises indirect reverse false claims

pursuant to 31 U.S.C. § 3729(a)(1)(G). This provision imposes liability on

> any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government . . .[3]

*Id.* Courts refer to claims brought under this paragraph of the statute as a reverse false claim because the defendant's actions "result not in improper payment to the defendant from the government, but rather no payment (or reduced payment) to the government when payment is otherwise obligated." *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003). When a defendant makes a false statement to a third party—here, HMS to a state Medicaid agency—this is known as an indirect reverse false claim. *United States v. Caremark, Inc.*, 634 F.3d 808, 815 (5th Cir. 2011).

Section 3729(a)(1)(G) imposes liability for either making, using, or causing to be made or used, a false record or concealing, avoiding, or decreasing an obligation to pay money to the Government. *See* 31 U.S.C. § 3729(a)(1)(G) (providing two methods of violating the statute). To establish an indirect reverse false claim, a relator must prove either: "(1) a false record or statement; (2) the defendant's knowledge of the falsity; (3) that the defendant made, used, or causes to be made or used a false statement or record; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) the materiality of the misrepresentation," *United States ex rel. Matheny v. Medco Health Sols. Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (addressing a reverse false claim); *United States ex rel. Hendrickson v. Bank of America, N.A.*, 343 F. Supp. 3d 610, 632

_____

[3] Florida's state FCA, Tennessee's state Medicaid FCA, and New York's state FCA statutes mirror this language. FLA. STAT. ANN. § 68.082(2)(g) (West 2013); TENN. CODE ANN. § 71-5-182 (West 2013); N.Y. FIN. SERV. LAW § 189(g–h) (McKinney 2018). New York's statute also includes a provision for those that conspire to commit this act. *Id.* § 189(h). Tennessee's state FCA statute does not require the representation to be material. TENN. CODE ANN. § 4-18-103 (West 2012), but for reasons discussed in § A(1)(ii), the Court does not address this difference.

(N.D. Tex. 2018) (citing *United States ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, 2016 WL 5661644, at *11 (N.D. Tex. Sept. 30, 2016)), or (1) an obligation to pay or transmit money or property to the government; (2) the defendant conceals, improperly avoids, or decreases this obligation; and (3) defendant acted with knowledge.[4] *See* 31 U.S.C. § 3729(a)(1)(G).

Defendant raises five arguments for why the Court should dismiss Relator's complaints. Two of these arguments largely track elements of an FCA claim—knowledge, obligation, and materiality. Defendant also argues Relator fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b), the VA/DOD Complaint relies on non-existent facts, and the FCA statute of limitations bars many of Relators claims. Doc. 25, Def.'s Mem., ¶¶ 18–20, 23–25. The Court will now address each of Defendant's arguments in turn and for each complaint.

A.     *Whether Relator's Pleading Satisfies Rule 9(b)*

To survive Defendant's Motion to Dismiss, Relator's First Amended Complaint must plead sufficient facts to meet the burden required under Rule 9(b) for the FCA. Defendant argues that the Court should apply Rule 9(b)'s traditional heightened pleading standard. Doc. 25, Def.'s Mem., 18. According to Defendant, under this standard, Relator's Amended Complaints fall short for failing to "state-specific allegations." *Id.* at 18–19. Defendant further contends that Relator fails to identify "any (1) particular contract provision, (2) particular conduct that violated any particular contract in any particular state, (3) particular person (or even group of people) involved with those alleged violations, or (4) particular claim or group of claims that was submitted (or failed to be submitted) under those contracts." Doc. 33, Def.'s Reply, 10.

---

[4] Relator's Amended Complaints do not clearly identify which method Relator intends to prove so the Court addresses both methods where appropriate. *See* Medicaid Doc. 19, Am. Compl., ¶¶ 91–207; VA/DOD Doc. 21, Am. Compl., ¶¶ 55–65.

In response, Relator argues for a relaxed Rule 9(b) standard. Doc. 28, Pl.'s Resp., 13. Relator maintains that courts normally relax the standard when the alleged wrongful actions took place nationwide or the information remains the exclusive possession of the Defendant and both factors are present here. *Id.* at 14–15. Relator relies on *United States ex. rel. Johnson v. Shell Oil Co.,* which discusses how pleading the "who," "what," "where," "when," and "how" of a claim is sufficient to provide notice to the Defendant of the claim against them while meeting the Rule 9(b) pleading standard. 183 F.R.D. 204, 207–08 (E.D. Tex. 1998). However, this decision predates the Fifth Circuit's more recent discussion of the pleading standard for an FCA claim under Rule 9(b). While a traditional Rule 9(b) fraud claim requires pleading the particularities of the "who," "what," "where," "when," and "how", the Rule 9(b) pleading standard for an FCA is less stringent due to the missing elements of reliance and damages found in a common law fraud claim. *Grubbs*, 565 F.3d at 189. The Court applies a somewhat lower Rule 9(b) standard in the context of the FCA that requires the relator to either allege details of a submitted false claim or "alleg[e] particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190. Therefore, if Relator successfully pled the "who," "what," "where," "when," and "how" of each of the claims, Relator pled beyond that which is required under Rule 9(b) for an FCA claim. *See id.*

1.    State Medicaid Complaint

Relator makes twenty-eight claims in the Medicaid Complaint. Medicaid Doc. 19, Am. Compl.,¶¶ 91–207. The first four claims allege violations of 31 U.S.C. § 3729(a)(1)(G) and the latter twenty-four claims allege violations of state FCA statutes. *Id.* The first claim alleges that Defendant failed to bill TPL claims timely or at all; claim two alleges that Defendant failed to upload coverage

into MMIS; claim three alleges that Defendant failed to refund the "add" fees in New York; and claim four alleges that Defendant charged twice for the same information under the "Tennessee Model." *Id.* ¶¶ 91–111. Claims 5–28 allege that a combination of the first and second claims occurred in each of the states, except that the Florida claim only alleges a failure to timely bill claims. *Id.* ¶¶ 112–207.

### i.     *Claims 1–4 alleging violations of the FCA*

Relator identifies HMS as the "who." As the "what," Relator alleges in the Amended Complaint that Defendant (1)  failed to timely bill third party claims in a timely manner or at all and failed to include this information in its periodic reports to state Medicaid agencies, *id.* ¶ 51, (2) failed to update the MMIS and provided regular false certifications, *id.* ¶ 62, (3) kept "add" fees owed to New York, *id.*  ¶¶ 64–66, and (4) double billed for patient third party insurance coverage to the state Medicaid agencies and the Medicaid MCOs ("Tennessee model"), *id.* ¶¶ 69–71. Relator identifies "where" the wrongful action took place as being through reports provided to the government clients, at the offices of the Defendant, and at status update meetings in these offices. *Id.* ¶¶ 9, 48, 51, 54–56, 61–62, 65. Relator states the "when" as 2006 to 2013 and possibly to the present. *See id.* ¶¶ 4, 10. Lastly, Relator identifies the "how" as failing to properly maintain systems to handle the legal and regulatory obligations of the Defendant, and through the performance of regular "holds," "cleans," and "cycle edits" that prevented reimbursement of claims. *Id.* ¶¶ 45–46, 83, 87. These alleged facts sufficiently provide the "who," "what," "where," "when," and "how" to satisfy the Rule 9(b) standard for an FCA claim for counts 1–4.

### ii.     *Claims 11, 23, and 27: The Florida, New York, and Tennessee claims*

Relator alleges acts occurring in New York for the "add" fees scheme, the "Tennessee model"

to double bill states in Tennessee, and to timely collect reimbursements in Florida. The Court will now address the claims for these states.

For the Florida claim, Relator alleges that HMS, the "who," failed to timely bill claims in Florida, the "what." *Id.* ¶ 50. "Where" the wrongful action took place in the complaint is through the periodic reports provided to the states as claims out for collection. *Id.* ¶ 48. He further identifies the "when" as 2006 to the present day. *See id.* ¶¶ 4, 10. As to the "how," Relator alleges the reports failed to include the "holds" while representing that the claims were sent out for reimbursement. *Id.* This level of specificity provides Defendant notice of the "who," "what," "where," "when," and "how" of the Florida claim.

For the New York state FCA claim, Relator identifies HMS as the "who." *Id.* ¶ 64. He further alleges the collection of "add" fees in violation of the contract to refund these fees when a claim was collected as the "what." *Id.* ¶¶ 64–65. Relator identifies the "where" the wrongful acts took place as in the periodic reports provided to the State of New York, *id.* ¶ 65, and "when" as until early 2009. *Id.* ¶ 64. Lastly, Relator alleges how the statements were false as failing to disclose that HMS owed the State of New York a refund for the "add" fee. *Id.* For the New York claim, Relator sufficiently pled enough allegations to put Defendant on notice of "who," "what," "where," "when," and "how" of the New York claim.

Relator alleges violations of TENN. CODE ANN. § 71-5-182 and TENN. CODE ANN. § 4-18-103 for the "Tennessee model." *Id.* ¶ 199–203. Under the "Tennessee model," Relator identifies HMS as the "who." *Id.* ¶ 69. He identifies the double billing for the same information as the "what." *Id.* ¶¶ 69–70. The "where" is through the selling of the same information to the Medicaid MCOs and the State of Tennessee. *Id.* ¶ 69. Relator further identifies the "when" as 2006 to the present day. *See*

- 13 -

*id.* ¶¶ 4, 10. The "how" is by charging the state twice for the same information by requiring MCOs and the State of Tennessee to each pay for information they shared with each other. *Id.* ¶¶ 69–70. Relator pled sufficient allegations to inform Defendant of the "who," "what," "where," "when," and "how" of the Tennessee claim under TENN. CODE ANN. § 71-5-182. However, TENN. CODE ANN. § 4-18-108 specifically states this chapter of the statute does not apply "to claims arising out of funds paid to or by TennCare managed organizations." Therefore, Relator cannot allege a violation of this statute for the "Tennessee model" and the Court **DISMISSES** this portion of the claim.

        *iii.*      *The remaining 21 state FCA claims*

As for the remaining state FCA claims, Relator fails to allege what specifically took place in the remaining 21 state FCA claims. While the Amended Complaint as a whole provides the contours of a scheme to submit false claims in the 21 states, the lack of reliable indicia handcuffs the Court from finding a strong inference of submitted false claims. As such, the Court **GRANTS** Defendants Motion to Dismiss state FCA claims 5–10, 12–22, 24–26, and 28. Counts 11 (Florida FCA Claim), 23 (New York FCA claim), and 27 (Tennessee FCA claim), were sufficiently pled to provide the "who," "what," "where," "when," and "how" as described above.

    2.    <u>VA/DOD Complaint</u>

Relator's VA/DOD Complaint largely mirrors the Medicaid Complaint.[5] *Compare* VA/DOD Doc. 21, Am. Compl., ¶¶ 24–28, 30–54, *with* Medicaid Doc. 19, Am. Compl., ¶¶ 36–41, 42–46, 48, 52–56, 74–88. The VA/DOD Complaint, however, lacks specificity about the contracts or actions

---

[5] The VA/DOD Complaint mirrors the Medicaid Complaint with the substitution of the words "VA" and "DOD" in the place of "state Medicaid agency." *Compare* VA/DOD Doc. 21, Am. Compl., ¶¶ 24–28, 30–54, *with* Medicaid Doc. 19, Am. Compl., ¶¶ 36–41, 42–46, 48, 52–56, 74–88. Such a substitution of words is emblematic of a lack of knowledge of the facts to support a claim under Rule 12(b)(6), much less Rule 9(b).

- 14 -

taken in relation to the VA/DOD contracts. Relator also appears to lack direct knowledge about the contours of the contracts with the VA or DOD. *See* VA/DOD Doc. 21, Am. Compl., 4 (Relator managed relationships with state Medicaid agencies, not the DOD or VA); *see also* Doc. 25-1, Def.'s App. A (providing the relevant language from HMS's contracts with the VA and DOD). While the Court does not expect Relator to obtain copies of the contracts within the exclusive possession of the Defendant, the allegations in the complaint fail to allege sufficient facts to cross the threshold from "conceivable to plausible." *Twombly*, 550 U.S. at 570. Even when viewing the facts in a light most favorable to the Relator, the Court finds the lack of specificity about how the Defendant's actions allegedly violated the FCA fatal for the VA/DOD Complaint.

Relator requests discovery to unearth the alleged VA or DOD contracts. Doc. 28, Pl.'s Resp., 22. But, discovery controls provide no alternative to a motion to dismiss. *Iqbal*, 556 U.S. at 684–85 (citing *Twombly*, 550 U.S. at 559). Discovery is not intended to weed out the groundless claims from the meritorious. *Id.* It would therefore be improper for the Court to allow discovery to find the VA or DOD contracts. Thus, the VA/DOD Complaint fails to meet the threshold pleading requirement under Federal Rule of Civil Procedure 8(a), much less a heightened 9(b) standard. Because Relator fails to plausibly allege the existence of contracts between Defendant and the VA or DOD, the Court **GRANTS** Defendant's Motion to Dismiss for the VA/DOD Complaint.

B.    *Whether Relator's Pleadings Satisfy the False Claims Acts Substantive Requirements*

Defendant argues Relator fails to establish three of the elements of an indirect reverse false claim: obligation, knowledge, and materiality. Doc. 25, Def.'s Mem., 9–18. Under 31 U.S.C. § 3729(a)(1)(G), the relator must prove either five or three elements. *See* 31 U.S.C. § 3729(a)(1)(G). Both methods requires relator to establish the "obligation" and "knowledge"

elements. *Id.* But only the first method requires proving the materiality element. *Id.* The Court will first address the common elements of obligation, and knowledge. The Court will then address the required element of materiality for the first method of establishing an indirect reverse false claim.

1.    Obligation

i.    *Claims 1–4 alleging violations of the FCA*

As stated above, the fourth or first element of an indirect reverse false claim requires Relator to prove Defendant acted "to conceal, avoid, or decrease an obligation to pay money to the government." *United States ex. rel. Matheny v. Medco Health Sols. Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012). "Obligation" is defined by the False Claims Act as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3). As interpreted by courts in this Circuit, the term "'established' refers to whether there is any duty to pay, while 'fixed' refers to the amount of the duty." *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1037 (5th Cir. 2016). Thus, obligations have three attributes: "(1) they must be 'established dut[ies]'; (2) they need not be 'fixed'; and (3) they can arise from a list of sources, including statutes and regulations." *Id.*

The issue raised by the Medicaid Complaint is whether the States owed an obligation to the federal government for Medicaid reimbursement. State Medicaid agencies must "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan" and "seek reimbursement for such assistance to the extent of such legal liability." 42 U.S.C. §1396a(25)(A–B); 42 C.F.R. § 433.139(d) (stating "an agency must seek recovery of reimbursement from the third party . . . within 60 days."). "If the State receives [federal financial participation] in

- 16 -

Medicaid payments for which it receives third party reimbursement, the State must pay the Federal government a portion for the reimbursement . . . ." 42 C.F.R. § 433.140.

Defendant argues that Relator fails to allege any "obligation" owed to the Government by Defendant. Doc. 25, Def.'s Mem., 9. The money allegedly owed to the Government stems from contingent, dependent, or speculative "obligations" which courts have found as not actionable under the FCA. *Id.* at 10. The alleged failure of Defendant to bill liable third parties did not establish an obligation to pay the plaintiff States. *Id.* at 12.

Defendant relies on *Petras*, a Third Circuit case, to assert that any obligation owed by HMS to the government remains too speculative. Doc. 25, Def.'s Mem., 9 (discussing *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Circ. 2017)). In *Petras*, the relator made a reverse FCA claim alleging the defendant company failed to pay accrued dividends after being forced into a receivership operated by the Small Business Administration ("SBA"). *Petras*, 857 F.3d at 502. The Third Circuit held that the SBA did not qualify as the Government when stepping in as receiver of a private entity so the defendants did not avoid or decrease an obligation owed to the Government. *Id.* at 503–04. Of importance to this case and the Defendant's arguments, the court in *Petras* examined the definition of obligation after the amendments to the FCA made by the Fraud and Recovery Act of 2009. *Id.* at 505. The present definition sought to prevent relators from seeking to enforce fines by the Government before the Government imposed such a fine. *Id.* Thus, "an 'obligation' refers to one existing at the time of the improper conduct to pay the Government funds"—which never materialized for the defendants. *Id.* at 506. Stated another way, the current definition of obligation turns on whether a duty to pay the Government funds exists, or only a duty not to break the law. *See Simoneaux*, 843 F.3d at 1040 (distinguishing between a fine or penalty and

a duty to pay such as with custom laws).

The Court finds the comparison to *Petras* unavailing for Defendant. Federal statute and regulations impose a duty upon the Defendant to seek reimbursement from third parties. 42 U.S.C. § 1396a(25)(A–B); 42 C.F.R. § 433.139(d). Defendant's alleged failure to bill liable third parties does not allow Defendant to avoid this obligation to collect and remit payments to state Medicaid agencies, who in turn must reimburse the Government. Nor is anything about the obligation owed by the Defendant speculative. Defendant owes a duty to obey the law, which clearly requires seeking reimbursement from liable third parties.

By contrast, Relator argues that the State's duty under the Medicaid program to seek reimbursement from liable third part insurers and remit the federal government's portion established an "obligation." Doc. 28, Pl.'s Resp. 5. Relator further contends that the 2009 Amendment to the FCA expanded the definition of "obligation" from established duties to also include "contingent, non-fixed" obligations. *Id.* at 6. Relator highlights the *Caremark* and *Grubea* cases in his Response. Doc. 28, Pl.'s Resp. 5–8.

The *Caremark* case is analogous to the current case in that both concern indirect reverse false claims and involve state Medicaid reimbursements. *United States v. Caremark, Inc.*, 634 F.3d 808 (5th Cir. 2011). In *Caremark*, the Government alleged that the defendant avoided payment to state Medicaid agencies by making false statements. *Id.* at 815. The court held that the defendant's false statements to the state Medicaid agencies caused those agencies to lie to the Government, violating the FCA. *Id.* Because States must seek reimbursement from third parties or dual eligible individuals and return these funds to the Government, 42 U.S.C. § 1396a(25)(A), false statements by the defendant could impair state Medicaid agencies' obligation to reimburse the Government. *Id.* at 817.

In *Grubea*, the Defendant submitted false claims to Fannie Mae and Freddie Mac, causing the agencies to reimburse inflated foreclosure costs, which in turn reduced the dividend paid by those agencies to the Treasury. *United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 703 (S.D.N.Y. 2018). The court emphasized that "the payment obligation to the Government would not disappear" whether or not Fannie Mae declared a dividend. *Id.* Thus, the court found an obligation existed for Fannie Mae to pay funds to the United States and that the defendant's actions impaired this obligation. *Id.* at 704.

Similarly here, Relator alleges Defendant provided inaccurate and false information to the state Medicaid agencies, which inhibited their obligation to reimburse the Government for third party claims. Medicaid Doc. 19, Am. Compl., ¶¶ 48, 51, 54, 56, 62. By providing false or inaccurate information, the state agencies lied to the Government in potential violation of the FCA. The States have an obligation to collect third party liability claims and remit payments to the Government—regardless of when collected. The obligation to remit the payments does not disappear due to an inability to collect the claim. Accordingly, the Court finds Relator sufficiently alleges that an "obligation" exists for purposes of 31 U.S.C. § 3729(a)(1)(G), which satisfies the fourth or first element of an indirect reverse false claim.

ii. *Florida, New York, and Tennessee alleged violations of state FCAs*

Florida's FCA statute's definition of obligation almost perfectly mirrors the definition within the FCA.[6] Therefore, this minor alteration results in the same outcome as the analysis under the

---

[6] Florida's statute contains one change that does not affect the Court's analysis of whether an obligation existed. The alteration replaced the phrase "whether fixed or not fixed" with "fixed or otherwise." *Compare* 31 U.S.C. § 3729(b)(3), *with* FLA. STAT. ANN. § 68.082(1)(e) (West 2013). As stated, "fixed" refers to the amount of duty and not whether a duty existed. Further, the definition of obligation includes fixed or unfixed duties which would include all duties.

FCA and the "obligation" element is satisfied for the Florida claim.

New York's statute and Tennessee's Medicaid FCA statutes define obligation exactly the same as the FCA. *Compare* 31 U.S.C. § 3729(b)(3), *with* N.Y. FIN. SERV. LAW § 188(4) (McKinney 2010), *and* TENN. CODE ANN. § 71-5-182(d) (West 2013). Therefore, the analysis *supra* directly applies to the obligation owed under the New York FCA and Tennessee Medicaid FCA statutes. Accordingly, the Court finds Relator plausibly pled that an obligation exists under these statutes.

> 2.    Knowledge

Relator must establish Defendant's "knowledge of the falsity" of the record or statement provided to the Government. *United States ex. rel. Matheny v. Medco Health Sols. Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012). The FCA defines "knowingly" to "mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1). At a minimum, a relator must plead that the defendant acted in reckless disregard of the truth or falsity of the information. *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014). "Knowledge need not be pled with particularity under Rule 9(b); it need only be pled plausibly pursuant to Rule 8." *Id.*

Defendant contends that Relator's Amended Complaints fail to establish the "rigorous and demanding" element of knowledge. Doc. 25, Def.'s Mem., 13. Defendant first alleges that Relator's "illogical and irrational" theories undercut the FCA claim because Defendant's alleged actions resulted in receiving less, not more money from the states and federal governments. *Id.* at 14. Next, Defendant argues that insufficient facts in the Amended Complaint and the conflicting statutory and regulatory language prevent the establishment of knowledge. *Id.* at 15–16.

Relator argues that the 2009 amendment to the FCA broadened the definition of knowledge to include reckless disregard of the truth and deliberate ignorance, which the Amended Complaint sufficiently alleged. Doc. 28, Pl.'s Resp., 8. Relator further contends that Rule 9(b) allows a plaintiff to make conclusory allegations about the defendant's knowledge. *Id.* at 9. Lastly, Relator argues that the Amended Complaint provides "vivid example[s]" to establish Defendant's knowledge and the statutes and regulations make the obligations of the Defendant quite clear. *Id.* at 9–11.

                i.      *Claims 1–4 alleging violations of the FCA*

Relator alleges multiple instances of staff members and senior leadership knowing of issues at HMS to include: "buckets" of unbilled claims, Medicaid Doc. 19, Am. Compl., ¶ 45, the failure to appeal improperly denied claims, *id.* ¶ 55, the failure to upload insurance coverage information into MMIS, *id.* ¶ 62, improperly collecting the "add" fee, *id.* ¶¶ 64–66, and double billing for the same information, *id.* ¶¶ 71–73. Relator further recounts conversations with the Executive Vice President, Chief Business Officer, Vice President of Operations, COO, Senior Vice President, and Vice President of HMS about these issues. *Id.* ¶¶ 74–78. Relator even included recommendations for overcoming some of these issues in the Strategic Plan that was reviewed by senior leadership. *Id.* ¶¶ 79–81. Defendant withheld or misrepresented these issues in the written reports and in-person status meetings it prepared and held for the Plaintiff States. *Id.* ¶¶ 48, 51. Based on these allegations, the Amended Complaint sufficiently alleges Defendant acted with reckless disregard of the truth by providing false reports or statements to the Plaintiff States who then provided false information to the Government.

                ii.     *Florida, New York, and Tennessee alleged violations of state FCAs*

Florida defines knowledge almost identically to the FCA.[7] As under the FCA, Relator has to prove a minimum of reckless disregard of the truth for the Florida statute. FLA. STAT. ANN. § 68.082(1)(e) (West 2013). The allegations discussed *supra* clearly establish at least this level of knowledge.

New York law also almost identically tracks the definition of knowledge in the FCA. The only change made to the New York law was modifying the grammar to make the verb singular instead of plural. *Compare* N.Y. FIN. SERV. LAW § 188(4) (McKinney 2010), *with* 31 U.S.C. § 3729(b)(3). This minor alteration has no impact on the overall definition of the scienter requirement. Therefore, the Court finds Relator sufficiently alleged at least reckless disregard of the truth per the allegations discussed *supra*.

Tennessee's Medicaid FCA statute's definition of "knowing" and "knowingly" exactly mirrors the FCA. *Compare* 31 U.S.C. § 3729(b)(3), *with* TENN. CODE ANN. § 71-5-182(b) (West 2013). Thus, the Court finds the allegations discussed *supra* about Relator's discussions with senior management sufficiently pled the scienter requirement for a violation of the Tennessee Medicaid FCA.

3.    Materiality

Relator must also establish the "materiality of the misrepresentation" by Defendant to the Government. *Matheny*, 671 F.3d at 1222. The False Claims Act defines material as "having a natural

---

[7] The Florida statute corrected the grammar in the federal statute, moved the dependent clause before the subject, and substituted "or" for "and" between knowing and knowingly. *Compare* FLA. STAT. ANN. § 68.082(1)(e) (West 2013), *with* 31 U.S.C. § 3729(b)(3). Specifically, the Florida statute altered the prefacing clause to read "'Knowing' or 'knowingly' means, with respect to information, that a person" instead of "'Knowing' and 'knowingly' mean that a person, with respect to information." *Compare* FLA. STAT. ANN. § 68.082(1)(e) (West 2013), *with* 31 U.S.C. § 3729(b)(3). These minor alterations have no effect upon the definitions application to this case, especially since the definition kept the same scienter requirements.

tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "The materiality standard is demanding." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016). As the Supreme Court explained in *Escobar*, three factors relevant to analyzing materiality are: "(1) 'the Government's decision to expressly identify a provision as a condition of payment'; (2) 'evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement'"; and (3) whether noncompliance was minor or insubstantial because that prevents a finding of materiality. *United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 160 (5th Cir. 2019) (quoting *Escobar*, 136 S. Ct. at 2003).

Defendant argues that Relator fails to meet the "rigorous" and "demanding requirement of materiality" because Relator fails to allege sufficient facts, or those alleged amount to conclusory allegations. Doc. 25, Def.'s Mem., 16–17. Furthermore, Defendant contends that Relator failed to allege Defendant knowingly violated a material requirement owed to the state or federal governments. *Id.* at 17. In its Reply brief, Defendant contends Relator fails to allege facts showing that Defendant's actions impacted any of the governments' payment decisions or that Defendant ever possessed any government property then owed to the government. Doc. 33, Def.'s Reply, 9.

Relator responds that the definition of materiality within the FCA only requires a relator to allege the Defendant's wrongful conduct "could have" or had the "potential" to influence government decision-making. Doc. 28, Pl.'s Resp., 11. Defendant's alleged actions during the "holds," "cleans," and "cycle edits" resulted in false or incorrect reports regarding the billing status of TPL claims, which impaired an obligation of the Plaintiff States to recover on these claims and

remit a portion to the federal government. *Id.* at 12. Relator relies on *Matheny* from the Eleventh Circuit, to address the materiality contention. Doc. 28, Pl.'s Resp., 12. In *Matheny*, two former employees of the defendant company brought a quit tam suit for overpayments owed to the CIA. 671 F.3d at 1220. The defendant hid overpayment account information by reassigning it to fictitious accounts or using a "datafix" computer program to eliminate accounts. *Id.* at 1220–21. The court found the Certification of Compliance by the defendant representing that they did not owe any money to the Government material because this prevented the Government from identifying and recovering the overpayments. *Id.* at 1228–29. Relator alleges Defendant ran a similar "datafix" scheme to hide third party liable accounts, materially impairing the obligation of the state Medicaid agencies to reimburse the Government. Doc. 28, Pl.'s Resp., 12.

The Court will examine each of the three factors from Escobar to determine whether Relator sufficiently pled materiality for the remaining claims.

     i.     *Claims 1–4 alleging violations of the FCA*

     a.     Conditions of payment

As explained above, Medicaid statutes and regulations require state agencies to reimburse the federal government for any collections from third parties. State Medicaid agencies must obtain information about liable third parties and seek reimbursement within sixty days. 42 U.S.C. § 1396a(25)(A–B); 42 C.F.R. § 433.139(d). A portion of these reimbursements must then be remitted to the federal government. 42 C.F.R. § 433.140. This legal framework establishes a "condition of payment" but in reverse since this is a reverse false claim. Instead of the Government directly conditioning payment to the Defendant, payment has been provided by the Government in expectation of reimbursement for the portion of outlays obtainable from liable third parties. The

Medicaid framework requires the Defendant to timely seek reimbursement from liable third parties on behalf of the Plaintiff States who then remit a portion to the federal government. *See* 42 U.S.C. § 1396a(25)(A–B); 42 C.F.R. § 433.139(d); 42 C.F.R. § 433.140. The "condition of payment" flows in reverse from the liable third party claims to the states and finally as reimbursement to the federal government. Thus, Relator's allegation of Defendant's failure to timely collect or collect reimbursement from liable third parties establishes a condition of payment. This factor weighs in favor of Relator.

b.      Government enforcement

Next, the Court examines whether the Government would have sought reimbursement from the States if it had known of the alleged violations.[8] The Court cannot expect Relator "to know precisely the Government's prosecutorial practices without the benefit of discovery." *Lemon*, 924 F.3d at 162. Relator raises a reasonable inference that Plaintiff States and the federal government would have sought reimbursement for the failure to file third party liability claims, failure to upload coverage information into MMIS, failure to refund "add" fees, and charging state Medicaid agencies twice for the same information. Conversely, Defendant fails to provide any evidence that the Government does not seek reimbursement despite actual knowledge of the alleged violations. *See United States ex rel. Campie, v. Gilead Scis, Inc.*, 862 F.3d 890, 907 (9th Cir. 2017) (noting the lack of evidence available at the motion to dismiss stage). Thus, the Court finds this factor also weighs in favor of Relator.

---

[8] For a traditional FCA claim, the Court would examine "whether the Government would deny Defendant[] reimbursement payments if it had known of these alleged violations." *Lemon*, 924 F.3d at 161. Since this is an indirect reverse false claim, the Government is the entity owed reimbursement and not Defendant so the analysis requires the inverse formulation of the traditional FCA claim.

c.      Substantial or minor

This inquiry turns on whether the Government would attach importance to the noncompliance. *Lemon*, 924 F.3d at 163. If the noncompliance was merely minor or insubstantial, then the noncompliance would be unimportant to the Government. Each individual TPL claim is probably minor or insubstantial, but Relator alleges the sum total of these claims equals millions or billions of dollars. Medicaid Doc. 19, Am. Compl., ¶¶ 7, 42. Undoubtedly, the Government would attach importance to such a large sum of money. Since the Government would likely seek reimbursement if it knew of the violations, the Government would attach importance to the noncompliance. It is reasonable to assume that the Government would attach importance to double billing for the same information, failing to seek reimbursement, failing to upload insurance coverage information to MMIS, and not refunding "add" fees which add to the overall cost of the Medicaid program.

The Court finds Relator sufficiently alleged materiality for claims 1–4 within the Medicaid complaint.

ii.      *Florida, New York, and Tennessee alleged violations of state FCAs*

The definitions of material within the Florida, New York, and Tennessee statutes all mirror the definition within the FCA.[9] *Compare* 31 U.S.C. § 3729(b)(4), *with* FLA. STAT. ANN. § 68.082(1)(d) (West 2013), N.Y. FIN. SERV. LAW § 188(5) (McKinney 2010), *and* TENN. CODE ANN. § 71-5-182(e) (West 2013). Therefore, all of the analysis discussed *supra* for the FCA is also relevant to the analysis under each of these statutes. The Court will analyze these three state claims

_____

[9] New York's statute omits the second comma found in the FCA that would offset "or be capable of influencing" as a dependent clause. This minor alteration does not change the outcome in this case.

together for each of the *Escobar* factors.

a.      Conditions of payment

The Medicaid framework establishes a condition of payment for the liable third parties to the state Medicaid agencies. Once again, this condition of payment flows in reverse from the third party Defendant to the states and then to the federal government since these are indirect reverse false claims. In Florida, the failure to collect the TPL claims shows a violation of the conditions of payment. Medicaid Doc. 19, Am. Compl., ¶¶ 49–50; 42 U.S.C. § 1396a(25)(A–B); 42 C.F.R. § 433.139(d). In New York, the same is true. Defendant violated the conditions of payment by not refunding the "add" fee when a TPL claim was also collected. Medicaid Doc. 19, Am. Compl., ¶¶ 64–68. Lastly, in Tennessee, the double billing for the same information violated the condition of payment by essentially billing the State twice for the same information. *Id.* ¶¶ 69–73. Therefore, the Court finds a condition of payment existed for each of the state claims and this factor weighs in favor or Relator.

b.      Government enforcement

Next, the Court considers whether the States would have sought reimbursement from the Defendants had they known of the violations.[10] The federal government covers a large percentage of the total cost for state Medicaid programs. *See* 42 U.S.C. § 1396b (2020) (outlining the percentages covered by the federal government for different expenditures). But the federal government does not cover all of the expenses associated with Medicaid and the States bear a substantive portion. *Id.* Relator already alleges the value of claims not billed by Defendant range from

---

[10] *See supra* note 7 (discussing why a reverse false claim requires the inverse analysis of a traditional false claim).

millions to billions. Medicaid Doc. 19, Am. Compl., ¶¶ 7, 42. The Court finds the States would reasonably attempt to seek reimbursement of these funds had they known of the violations. Therefore, this factor weighs in favor of Relator.

### c.    Substantial or minor

Lastly, the Court examines whether the States would attach importance to the violations. The violations allegedly denied Plaintiff States reimbursements, "add" fees, or charged the State twice for the same information. *Id.* ¶¶ 49–50, 64–73. Each instance of failing to collect claims or reimburse an "add" fee was likely minor or insubstantial, but taken in the aggregate, these violations are substantial ones for which the state governments would likely have sought reimbursement. Additionally, charging a state twice for the same information impacts the amount covered by the federal government for the administration of the state Medicaid agency. Tennessee in particular, would likely not willingly pay twice for the same information and would find this violation substantial enough to deny payment to Defendant for the second set of the same information. The Court finds Relator sufficiently pled that these violations amount to more than substantial or minor violations. This factor weighs in favor of Relator.

Because all factors weigh in favor of Relator, the Court finds Relator sufficiently pled materiality for the Florida, New York, and Tennessee Medicaid FCA claims.

### C.    *Statute of Limitations*

The statute of limitations provision for the FCA and the States of Florida, New York, and Tennessee mirror each other, so the Court will analyze the provisions together. Under the FCA, an action may be brought:

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b).[11] The limitations period extends to a maximum of ten years when a relator discovers the fraud and later notifies "the official of the United States" of the material facts within the claim. *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507, 1513 (2019). At a minimum, an "official of the United States" must be either an officer of the United States under Article II of the United States Constitution or an employee of the United States. *Id.* at 1514.

Defendant argues the statute of limitations has run on the New York Office of the Medicaid Inspector General ("NY OMIG") claim since the new contract took effect over ten years before the filing of this case, Doc. 25, Def.'s Mem., 23, and Relator failed to rebut this argument. Doc. 33, Def.'s Reply, 12. Next, Relator may only pursue the state Medicaid claims for April and May of 2013 since § 3731(b)(1) limits Relator's claims to six years and Relator was terminated by Defendant in May 2013. *Id.* at 24. Defendant further contends Relator may not avail himself of the ten year statute of limitations under § 3731(b)(2) because Relator brought his allegations before the United State Department of Health and Human Services ("HHS") Office of Inspector General ("OIG") in November 2013 which only extends the statute of limitations by three years. *Id.* Because HHS administers the Medicaid programs with the statutory authority to investigate healthcare fraud, Defendant argues the HHS OIG qualifies as "the official of the United States" under § 3731(b)(2).

---

[11] Florida's FCA statute and Tennessee's Medicaid FCA statutes require the Department of Legal Affairs and the official of the state or political subdivision, respectively—as opposed to an official of the United States—to obtain knowledge of the claim. FLA. STAT. ANN. § 68.089(1)(b) (West 2013); TENN. CODE ANN. § 71-5-184 (West 2012). New York provides for a blanket ten years from the date of the violation to bring a claim. N.Y. FIN. SERV. LAW § 192(1) (McKinney 2010).

Doc. 33, Def.'s Reply, 13.

Relator argues "the official" within § 3731(b)(2) only pertains to officials authorized to assert FCA claims on behalf of the Government, specifically the Attorney General and their designees within the Department of Justice ("DOJ"). Doc. 28, Pl.'s Resp., 22. The Government filed a Statement of Interest for the sole purpose of asserting the same argument. Doc. 32, 1.

Relator brought his claims on April 16, 2019. *See* Medicaid Doc. 2, Compl. Under § 3731(b)(1), Relator's claims would extend back six years to April 16, 2013, but under § 3731(b)(2), Relator's claims would extend back up to ten years to April 16, 2009. In November 2013, Relator apprised the HHS of his allegations, which then triggered the three-year extension under § 3731(b)(2), if the HHS qualifies as "the official" within the context of § 3731(b)(2). The limitations period for Relator's claims would then have only extended to November 2016. The Court now examines whether an HHS employee qualifies as "the official" for the purposes of § 3731(b)(2).

The United States Supreme Court partially addressed this issue in *Cochise*. 139 S.Ct. at 1514. There the Court found the relator could not be "the official" within the meaning of the § 3731(b)(2). *Id.* But, the Court stopped short of adopting the broader argument advanced by the Government and Relator. *Id.* Turning to the language within the clause, the "use of the definite article . . . indicates that there is generally only one proper" person covered by the statute. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (explaining the use of "the" in the habeas context). "The official" then does not mean "an official" and must relate to a specific official. The Court agrees with the Government and Relator that "the official" within the context of the FCA more likely means an employee of the DOJ and not an employee of HHS OIG, as § 3730(a) requires the Attorney General to investigate FCA claims. 31 U.S.C. § 3730(a) (2010). The statute grants authority only to the Attorney General

and no other agency, including HHS, to investigate and prosecute FCA claims. *Id.* Under DOJ regulations, "all alleged claims under the False Claims Act" are "assigned to, and shall be conducted, handled, or supervised by, the Assistant Attorney General, Civil Division." 28 C.F.R. § 0.45(d). Therefore, the Civil Division of the DOJ possesses the exclusive authority to handle FCA claims. *See United States v. Macomb Contracting Corp.*, 763 F. Supp. 272, 274 (M.D. Tenn. 1990) (finding the three-year limitations extension under § 3731(b)(2) began once the FBI reported their investigation to the Civil Division of the DOJ). Accordingly, Relator's submission of a whistleblower complaint to HHS in November of 2013 did not apprise "*the* official of the United States charged with responsibility to act." *See* § 3731(b)(2) (emphasis added). Only once Relator filed his claim, which in turn notified the Civil Division of the DOJ of the claim, did "*the* official of the United States charged with responsibility to act" ascertain knowledge of the claim. *Id.* (emphasis added). This would allow his claims to date back ten years to April 16, 2009.

However, the Court will limit the claims allowed by the Relator to those occurring after April 16, 2009, and up through Relator's time of employment with HMS for the following reason. Relator alleges the fraudulent actions of HMS continue to the present day but provides no specific information to support this allegation. "[R]elator would have to have specific knowledge, acquired during his employment, that the scheme was occurring and that plans existed to continue the scheme after the relator's termination of employment." *United States ex rel. Colquitt v. Abbott Lab'ys*, 2015 WL 13670916, at *6 (N.D. Tex. July 24, 2015). Relator has not pled any specific knowledge of a scheme to continue any of the alleged acts committed by HMS. Therefore, the Court restricts the claims to a time period occurring between April 16, 2009—the beginning of the statute of limitations period—to May 2013—Relator's termination date. The Court **DENIES** Defendant's Motion to

Dismiss for these claims on the foregoing grounds.

F.    *Leave to Amend*

Given that this is the Court's first opportunity to assess the sufficiency of Relator's allegations, the Court deems it appropriate to provide him one chance to amend his pleadings in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). This second amended complaint shall be filed within **THIRTY (30)** days of the date of this Order.

## IV.

## CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** HMS's motion to dismiss (Doc. 24). Specifically, the Court **DENIES** Defendant's motion for claims 1–4, 11, 23, and 27 in the Medicaid Complaint. The Court **GRANTS** Defendant's motion and **DISMISSES WITHOUT PREJUDICE** claims 5–10, 12–22, 24–26, 27 insofar as it states a claim under TENN. CODE ANN. § 4-18-101–108, and 28. The Court also **GRANTS** Defendant's motion and **DISMISSES WITHOUT PREJUDICE** the VA/DOD Complaint. Within **THIRTY (30)** days of the date of this order, Relator shall file a second amended complaint as permitted in Part F, *supra*. From the date of Relator's filing, HMS has twenty-one (21) days to file an answer or motion to dismiss pursuant to Federal Rule of Civil Procedure 12.

SO ORDERED.

SIGNED: October 1, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE