UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. CHRISTOPHER FREY, §§§§§<br><br>Plaintiff/Relator,<br><br>v.<br><br>HEALTH MANAGEMENT SYSTEMS, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:19-CV-0920-B |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Health Management Systems, Inc. ("HMS")'s Unopposed Motion for an Order to Unseal (Doc. 79). Specifically, HMS moves the Court to issue an order under the All Writs Act directing the 126th District Court of Travis County, Texas to unseal a sealed pleading to allow for *in camera* inspection and attorneys'-eyes-only review. Doc 79, Mot. Unseal, 1. Having reviewed the Motion, the Court abstains from issuing an order at this time and directs HMS to first seek relief from the Travis County state court. The Motion (Doc. 79) is therefore **DENIED.**

### I.

### BACKGROUND[1]

This is a qui tam suit filed by Relator Christopher Frey against his former employer, HMS, but it is not Frey's first. *Id.* ¶ 1. Before initiating the present federal action in 2019, Frey had

---

[1] The Court draws on the facts as alleged in Relator's unopposed motion (Doc. 79).

previously filed a separate state qui tam action against HMS in state court. *See id.* ¶ 4; *Texas ex rel. Frey v. HMS Holdings Corp.*, D-1-GN-16-1842 (126th Dist. Ct., Travis County, Tex. 2016[2]). HMS was not aware of the state filing because, per normal qui tam procedure, the petition was sealed. *See* Doc. 79, Mot. Unseal, ¶ 5; Tex. Hum. Res. Code § 36.102(b).

While Frey's qui tam action was pending in state court, the State of Texas was also litigating a series of other lawsuits against various defendants—not including HMS—relating to Medicaid fraud, among other allegations (the "Xerox Lawsuits"). Doc. 79, Mot. Unseal, Ex. B at 3. Though HMS was not named in the Xerox Lawsuits, some connection presumably existed because, shortly after Texas settled the Xerox Lawsuits for $236 million, Frey and his counsel entered an agreement with Texas for $2.25 million of the $236 million "made in conjunction with the Xerox [s]ettlement [a]greement." *See id.*, Ex. A at 2. In exchange, Frey and his counsel agreed to a release of claims against "the State, the HMS Defendants, [and] the Defendants in the Xerox Lawsuit." *Id.*, Ex. A at 3.

Throughout this time, HMS remained unaware that there was a state qui tam action against it, and "HMS had no role in the . . . settlement" of Frey's state-law case. *Id.* ¶ 10. Rather, HMS only recently became aware of the release "after an Open Records Request and additional inquiry." *Id.* Upon discovering the release, HMS wondered whether any of Frey's current claims might be covered (and therefore barred). *See id.* The problem for HMS, however, is that a necessary piece

---

[2] The actual date of the state court case is unknown because it remains under seal, but HMS estimates the case was filed in 2016 based on the docket number. *See* Doc. 79, Mot. Unseal, ¶ 4.

to understanding the scope of the release remains sealed in state court. *Id.* ¶ 8. Specifically, Frey and his counsel previously agreed to

> release, discharge, and covenant not to sue the State, the HMS Defendants, or the Defendants in the Xerox Lawsuit for any civil . . . claim, action, [or] suit, . . . that [Frey or Frey's counsel] had, have, may have, have asserted, or could assert under any source of law . . . arising from the Covered Conduct.

*Id.* ¶ 6 & Ex. A at 3. The definition of "Covered Conduct," in turn, had two parts: (1) it incorporated the definition of "Covered Conduct" from the Xerox settlement agreement and (2) it included "*the conduct alleged in the HMS Lawsuit.*" *Id.*, Ex. A at 1 (emphasis added). However, the pleading from Frey's initial state qui tam suit—and thus the "conduct alleged in the HMS Lawsuit"—remains under seal in state court. *Id.* ¶ 8. In short, HMS is in the dark as to the scope of the prior release and whether it affects the present federal suit.

HMS has attempted to obtain the pleading through an open records request and an inquiry to the Travis County clerk of court. *Id.* ¶¶ 15–16. Neither attempt was fruitful, and the pleading remains sealed. *Id.* HMS further contends that traditional discovery is not proper here because asking Relator's counsel to provide a sealed document "would be in contravention of the [sealing] Order of the Travis County Court." *Id.* ¶ 18 n.3. Therefore, to fill this gap, HMS moves for an order under the All Writs Act requiring the Travis County court to provide the sealed pleading and related amendments for *in camera* inspection and attorneys'-eyes-only review. *Id.* ¶ 24.

## II.

## LEGAL STANDARDS

The All Writs Act grants federal courts the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of

law." 28 U.S.C. § 1651(a). Yet despite the broad language, writs are regarded as "one of 'the most potent weapons in the judicial arsenal,'" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Will v. United States*, 389 U.S. 90, 107 (1967)), and their issuance has therefore been heavily circumscribed, *see, e.g.*, Anti-Injunction Act, 28 U.S.C. § 2283 (prohibiting a federal court from staying state court proceedings, subject to three limited exceptions); *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985) (noting that the All Writs Act is only "a residual source of authority to issue writs that are not otherwise covered by statute").

Moreover, in the context of federal courts issuing orders to state courts, elementary principles of comity and federalism counsel extreme caution before exercising such authority:

> [T]he notion of "comity," . . . is [] a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . . [T]he concept . . . represent[s] . . . a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger v. Harris*, 401 U.S. 37, 44 (1971).

These "elementary principles of federalism and comity" are further "embodied in the full faith and credit statute," *Growe v. Emison*, 507 U.S. 25, 35 (1993), which provides that the "[a]cts, records and judicial proceedings [of any state] . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of [the] State . . . from which they are taken," 28 U.S.C. § 1738. In other words, absent a conflict with federal law, federal courts must give the acts of state legislatures the same respect as the states' own courts

would grant those statutes. *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 355 (3d Cir. 2003) (first citing U.S. Const., Art VI, cl. 2; and then citing *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 287 n.7 (1984)).

Under these broad principles, various circuits have therefore abstained from ordering the disclosure of state-sealed documents if the litigants have not first sought relief from the relevant state court. For example, in *Camiolo*, the plaintiff in a federal civil action sought to compel the production of grand jury transcripts, sealed under state law, from a prior state criminal case against him. *Id.* at 352. The federal district court ordered the District Attorney to produce the confidential testimony for "*in camera* review." *Id.* at 353. But the Third Circuit found error, holding instead that principles of comity, federalism, and full faith and credit counseled restraint: "At a minimum, and out of the respect and deference owed the state court, the District Court should have abstained from addressing [plaintiff's] motion . . . and direct[ed] [plaintiff] to first formally petition the judicial officer who possesses the supervisory authority to grant or deny such access." *Id.* at 354–55, 357 (citing *Younger*, 401 U.S. at 41).

Likewise, in *Socialist Workers Party v. Grubisic*, the Seventh Circuit held that, before enforcing a subpoena for grand jury transcripts sealed under state law, "notions of comity between the state and federal courts require[d] that the plaintiffs first seek disclosure in the state court with supervisory powers over the grand jury." 619 F.2d 641, 643 (7th Cir. 1980); *see also United States v. Olson*, 2015 WL 4509429, at *2 & n.23 (D. Nev. July 24, 2015) (applying the same abstention principles beyond the grand jury context, noting "the weight of the authorities generally supports

requiring the requesting party to first ask the state court to unseal the documents" and collecting cases).

### III.

### ANALYSIS

HMS seeks an order under the All Writs Act compelling the Travis County state court to unseal the relevant documents. Doc. 79, Mot. Unseal, 1. Though the motion is unopposed, such an order— "one of 'the most potent weapons in the judicial arsenal'"—is not to be issued lightly. *See Cheney*, 542 U.S. at 380 (quoting *Will*, 389 U.S. at 107). Rather, the Court agrees with similar decisions in sister circuits and finds that principles of federalism, comity, and full faith and credit presently require abstention. *See Camiolo*, 334 F.3d at 357; *Socialist Workers*, 619 F.2d at 644.

Like the state grand jury proceedings in *Camiolo* and *Socialist Workers*, the State of Texas has a developed body of law as to the sealing of various documents. *See, e.g.*, Tex. R. Civ. P. 76a (providing procedures and standards for sealing and unsealing documents); Tex. Hum. Res. Code § 36.102(b), (c-1) (providing for initial sealing of qui tam actions). To issue a writ ordering the disclosure of sealed documents without at least allowing the state court to rule on the continuing need for secrecy would seriously undermine the state court's sealing order and Texas's interests in maintaining a coherent sealing regime. *See Camiolo*, 334 F.3d at 356 ("Pennsylvania's legislature has endeavored to ensure the secrecy of the grand jury proceedings conducted in that state by limiting access to the transcripts of these proceedings."); *Socialist Workers*, 619 F.2d at 643 ("[P]rinciples of comity dictate that we carefully consider the integral role secrecy plays in the Illinois grand jury system . . . .").

Though the Court does not presently pass on the merits of whether such an order would be proper under the All Writs Act at some point in the future,[3] the Court finds HMS must, at minimum, first seek relief from the state court with the supervisory authority to grant or deny such access. *See, e.g.*, *Camiolo*, 334 F.3d at 357. Such a requirement adheres to principles of federalism, comity, and full faith and credit and provides the respect owed to the State of Texas in our dual system of government. *See Younger*, 401 U.S. at 44; 28 U.S.C. § 1738.

## IV.

## CONCLUSION

Because the Court abstains from issuing an order under the All Writs Act at this time, HMS's Motion for an Order to Unseal (Doc. 79) is **DENIED**. HMS must first seek relief from the Travis County court that originally issued the sealing order.

**SO ORDERED.**

**SIGNED: December 6, 2022.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[3] Should the issue later arise, the Court would request additional and more robust briefing as to the propriety of such an order—regardless of whether the motion is unopposed—given the important interests at play.