UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. CHRISTOPHER FREY,  §§§§§<br><br>  Plaintiff/Relator,  §§<br><br>v.  § CIVIL ACTION NO. 3:19-CV-0920-B<br> §§<br>HEALTH MANAGEMENT  §<br>SYSTEMS, INC.,  §§§<br><br>  Defendant.  § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Health Management Systems, Inc. ("HMS")'s Motion for Reconsideration (Doc. 147). HMS asks the Court to reconsider its previous Order denying HMS's Motion to Dismiss for Lack of Subject Matter Jurisdiction. *See* Doc. 141, Mem. Op. & Order. Because the Court finds HMS's arguments unpersuasive, the Motion for Reconsideration (Doc. 147) is **DENIED.**

### I.

### BACKGROUND

A full background of the events leading to HMS's Motion to Dismiss is provided in the Court's previous Order. *See* Doc. 141, Mem. Op. & Order, 2–7. In short, the Court concluded that a previous release Frey had signed with the State of Texas (the "Frey Settlement Agreement") did not bar his present suit. *See generally* Doc. 141, Mem. Op. & Order. HMS now urges the Court to reconsider its Order based on three arguments. First, HMS contends the Court erred in failing to apply a "federal common law" standard to its interpretation of the

release. Doc. 147, Mot. Recons., 3. Second, HMS argues that the Court misinterpreted the State of Texas's intent in entering the Frey Settlement Agreement. *Id.* at 5–7. And finally, HMS maintains that Frey should not be able to split his state and federal qui tam claims in duplicative lawsuits arising from the "same nucleus of operative facts." *Id.* at 7–8.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), a district court may reconsider and reverse a prior interlocutory order. *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018); *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (per curiam). The Court may "reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336. "The district court's discretion in this respect is broad." *Brown v. Wichita Cnty.*, 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011) (O'Connor, J.) (citing *Calpecto 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414–15 (5th Cir. 1993)).

Nevertheless, Rule 54(b) motions for reconsideration "have a narrow purpose" and "are not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *Charalambopoulos v. Grammar*, 2016 WL 5942225, at *2 (N.D. Tex. Oct. 13, 2016) (Fitzwater, J.). And the Court's broad discretion under Rule 54(b) "must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Turk v. Pershing LLC*, 2019 WL 13074701, at *1 (N.D. Tex. Aug. 1, 2019) (Godbey, J.).

III.

ANALYSIS

At the outset, the Court notes that each of HMS's arguments either rehash an old argument or could have been presented in its initial motion or the evidentiary hearing. *Compare* Doc. 95, Mot. Dismiss Br., *with* Doc. 147, Mot. Recons. Regardless, the arguments are not persuasive, and the Court briefly addresses each.

First, HMS's argument that the Court overlooked a "federal common law" standard in interpreting the release conflates contractual interpretation with contractual enforceability. Specifically, the cases which have adopted a standard of "federal common law" do so not in the context of the release's applicability, but rather its enforceability. For example, the Tenth Circuit in *U.S. ex rel. Ritchie v. Lockheed Martin Corp.* first addressed the question of "whether the language in the releases is broad enough to encompass qui tam claims." 558 F.3d 1161, 1167 (10th Cir. 2009). After concluding the releases did apply, the court then addressed a federal common law standard for enforceability given the significant federal and public interests in preventing fraud. 558 F.3d at 1168–69; *see also, e.g.*, *United States v. Purdue Pharma L.P.*, 600 F.3d 319, 328–30 (4th Cir. 2010) (first determining whether "the plain terms of the Release encompassed [the relator's] [False Claims Act] claims" before asking "whether overriding public policy considerations nonetheless prevent enforcement of the release"). HMS recognized this two-step framework in its initial Motion to Dismiss. *See* Doc. 95, Mot. Dismiss Br., 8, 10 (first addressing the applicability of the release under Texas law and then considering the enforceability of the release given public policy). Thus, because the Court found the release did

not apply to Frey's current claims, the Court did not need to address the second question of enforceability.

Second, HMS argues that the Court misinterpreted the State of Texas's motivations in entering the Frey Settlement Agreement. *See* Doc. 147, Mot. Recons., 6–7. But that argument only considers part of the settlement agreement's context. The Court agrees with HMS that the Frey Settlement Agreement was broad and "released any claims [Frey] could have asserted under the federal [False Claims Act] or other sources of law arising from the conduct he alleged in his [state] action." *Id.* at 6; *see also* Doc. 141, Mem. Op. & Order, 6 ("Frey signed a broad release of claims."). And the Court agrees that the State of Texas was likely motivated to prevent subsequent lawsuits that could implicate the Xerox settlement fund. *See* Doc. 147, Mot. Recons., 7. But the issue for the Motion to Dismiss was whether the State of Texas also intended to settle future litigation involving Xerox's subcontractors for conduct outside of Texas not involving Xerox. *See* Doc. 141, Mem. Op. & Order, 17. It is in this context that the Court concluded that "it would make little sense for the State of Texas to settle more claims than necessary," because Texas would then be paying for claims outside the scope of the Xerox settlement fund. *Id.* at 17.

Finally, HMS argues that Frey's claims are "barred by his prior release" and "arise from the same operative facts" as the state court action, resulting in a suit improperly split between state and federal courts. Doc. 147, Mot. Recons., 7–8. The exact nature of HMS's argument, however, is unclear. To the extent HMS is arguing that the release covers Frey's current claims, that argument has already been raised and addressed in the Court's prior Order. To the extent

HMS is now arguing claim preclusion, that argument is undeveloped and, in any event, should have been raised in the initial motion.

## IV.

## CONCLUSION

HMS's arguments are largely repackaged from its previous motion or could have been presented earlier. Regardless, the Court does not find the arguments persuasive in exercising its discretion under Rule 54(b). Accordingly, the Motion to Reconsider (Doc. 147) is **DENIED.**

**SO ORDERED.**

**SIGNED: June 8, 2023.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE