UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. CHRISTOPHER FREY, | § § § § § § § § § § § § | |
| Plaintiff/Relator, | | |
| v. | | CIVIL ACTION NO. 3:19-CV-0920-B |
| HEALTH MANAGEMENT SYSTEMS, INC., | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Health Management Systems, Inc. ("HMS")'s Motion for Leave to File Under Seal (Doc. 166) and Relator Christopher Frey's Motion for Leave to File Under Seal (Doc. 170). Having reviewed the documents in question and HMS's asserted interests in sealing, the Court **DENIES** the Motions. HMS may, within ten days of the date of this Order, file another motion to seal. If no motion is filed within that time, the Court will unseal the exhibits at issue.

### I.

### BACKGROUND

Following the Court's order on HMS's motion to dismiss, both parties filed amended summary judgment motions. Doc. 159, HMS Am. Mot. Summ. J.; Doc. 167, Frey Am. Mot. Partial Summ. J. Accompanying their motions are several appendices with exhibits. *See* Docs. 161–65, HMS Apps.; Doc 169, Frey App. For HMS, the bulk of its exhibits are filed on the public docket.

But HMS also seeks to file one exhibit—roughly eight pages—under seal. Doc. 166, HMS Mot. Seal; *see also* Doc. 166-1, HMS Sealed Ex.

Frey also moves for leave to file several of his exhibits under seal. Doc. 170, Frey Mot. Seal. But Frey makes clear that he has filed the Motion only "to respect the confidentiality of information contained in the Exhibits that, as HMS has informed the Relator, is confidential." *Id.* ¶ 2. In other words, HMS's confidentiality interests, not Frey's, are ultimately at issue. *See id.* (providing justifications for sealing based on HMS's interests alone). Thus, the Court will treat both Motions as essentially filed by HMS. And HMS's sealing requests for Frey's exhibits are more extensive. Of approximately 130 pages of exhibits, HMS seeks to seal roughly half. *Compare* Doc. 169, Frey App., *with* Doc. 170-1, Sealed Exs. Both Motions are unopposed. Doc. 166, HMS Mot. Seal; Doc. 170, Frey Mot. Seal.

## II.

## LEGAL STANDARD

As the Fifth Circuit has emphasized, "[d]ifferent legal standards govern protective orders and sealing orders." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022). And conflating the standards "over-privileges secrecy and devalues transparency." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 420 (5th Cir. 2021). "Under both standards, the working presumption is that judicial records should not be sealed." *Id.* at 419. "But at the adjudicative stage, when materials enter the court record, the standard for shielding records from public view is far more arduous." *Id.* at 420 (emphasis omitted).

Even so, the common law right of public access "is not absolute." *Bradley v. Ackal*, 954 F.3d

216, 225 (5th Cir. 2020). Rather, "[t]o decide whether something should be sealed, the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *June Med. Servs.*, 22 F.4th at 521 (internal quotations omitted). "Courts should be ungenerous with their discretion to seal judicial records. And, to the extent that any sealing is necessary, it must be congruent to the need." *Id.* (internal alterations, citations, and quotations omitted).

### III.

### ANALYSIS

The Court begins with HMS's Motion (Doc. 166). HMS moves to seal one exhibit in its appendix, totaling eight pages. *See* Doc. 166-1, HMS Sealed Ex. HMS contends the exhibit "reflects highly confidential business information such as HMS's processes, operations, and business relationships, which are of a competitive advantage to HMS." Doc. 166, HMS Mot. Seal, ¶ 3. More specifically, HMS says the email string contains "proprietary processes for both billing and rebilling claims," "precise numbers of claim lines and dollars at issue," and a "step-by-step account of HMS's internal process for investigating open claims," among other information. *Id.* ¶¶ 6–7. HMS further argues that, looking line-by-line, a redacted copy would need to be so heavily redacted that the remaining document would essentially have no public value. *See id.* ¶ 8.

HMS's Motion to Seal presents a close balancing, made more difficult by its unopposed posture. Indeed, as the Fifth Circuit has recognized, the Court's duty to the public docket is "easy to overlook in stipulated sealings . . . , where the parties agree, the busy district court accommodates, and nobody is left in the courtroom to question whether the decision satisfied the substantive requirements." *Binh Hoa Le*, 990 F.3d at 417. To be sure, HMS may have good reason

for wanting to seal, for example, "the precise number of claim lines and dollars at issue." Doc. 166, HMS Mot. Seal, ¶ 3. The problem, however, is that HMS fails to provide a link between the contents (e.g., the claim lines and dollars at issue) and its final interest (e.g., the information is proprietary). In other words, HMS does not explain *why* such information is regarded as confidential or *how* it could be valuable to competitors. This leaves the Court with little substance to actually balance.

The danger of this type of general reasoning becomes more apparent in Frey's Motion for Leave to File Under Seal, which, as explained above, asserts HMS's confidentiality interests. There, the reasons provided for sealing become broad. HMS argues several exhibits, for example, should be sealed because they contain "the status and exact dollar amounts of claims billed by HMS to particular carriers, and the names of the carriers." Doc. 170, Frey Mot. Seal, ¶ 2. Other reasons include that the documents contain "proposals for addressing matters raised in the emails" or "HMS's internal processes for billing claims to insurance carriers." *Id.* Again, the Court is left with little substance explaining why such information is confidential or would be valuable to competitors. Even more problematic, most of the reasons provided are so amorphous that they could presumably cover most documents in this case. It is, for example, difficult to imagine what documents would not—at least to some degree—reveal the "internal processes for billing claims to insurance carriers." *See id.* That is HMS's business, after all. And almost any email thread presumably contains "proposals for addressing matters raised in the emails." *See id.* To accept these reasons as adequate would be to essentially accept HMS's bare assertions of confidentiality. And in doing so, the standards for protective orders and sealing would meld into one. *Cf. June Med. Servs.*, 22 F.4th at 521

Beyond the reasons for sealing, HMS also highlights the fact that much of the information contained in the sealed documents is made public through "generalized arguments relating to the Exhibits." *E.g.*, Doc. 170, Frey Mot. Seal, ¶ 3. Thus, HMS seeks to seal "only the specific details . . . which are of limited value to the public but significant commercial value to HMS." *Id.* While the Court acknowledges this may be a helpful stand-in for documents appropriately sealed, it does not independently justify sealing. Simply, the parties' own arguments summarizing and characterizing the sealed exhibits "cannot be equated with the public's right of access to judicial records." *See SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (emphasis omitted) (reversing district court's sealing of a permanent injunction because disclosure of the injunction was "no substitute for allowing access").

Finally, HMS argues that it does not seek "to seal information in which the public has a great degree of interest." Doc. 170, Frey Mot. Seal, ¶ 7. The Court respectfully disagrees. To the extent the information sought to be sealed pertains only to HMS's proprietary business information, valid reasons for sealing may certainly exist. But the information at issue also relates to HMS's alleged failure to recover Medicaid funding improperly paid by the states and, in turn, the federal government. *See, e.g.*, Doc. 168, Relator's Am. Mot. Partial Summ. J., 1–2. Given this context, the Court will not lightly approve the sealing of over half Relator's summary judgment appendix on bare assertions of confidentiality alone.

## IV.

## CONCLUSION

"[E]ntrenched litigation practices harden over time, including overbroad sealing practices that shield judicial records from public view for unconvincing (or unarticulated) reasons." *Binh*

*Hoa Le*, 990 F.3d at 421. But past practices aside, the Court has been urged to "zealously guard the public's right of access to judicial records." *Id.* Thus, upon balancing the interests for nondisclosure against the public's right, the Court finds that HMS's asserted reasons for sealing are insufficient. HMS has failed to explain why certain information is regarded as confidential or potentially valuable to competitors. And without that link, the Court is left with little to balance.

Accordingly, the Court **DENIES** HMS's Motion for Leave to File Under Seal (Doc. 166) and Relator's Motion for Leave to File Under Seal (Doc. 170). HMS may, within ten days of the date of this Order, file another motion to seal that attempts to address the deficiencies identified above. If no motion is filed within that time, the Court will unseal the exhibits at issue.

**SO ORDERED.**

**SIGNED: September 1, 2023.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE