UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. CHRISTOPHER FREY, | § | |
| | § | |
| Plaintiff/Relator, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-0920-B |
| | § | |
| HEALTH MANAGEMENT SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Health Management Systems, Inc. ("HMS")'s Motion to Seal Certain Exhibits Submitted with Relator's Amended Motion for Partial Summary Judgment (Doc. 188). For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.

## BACKGROUND

This is a qui tam case concerning the adequacy of HMS's third-party liability services for state Medicaid agencies. Medicaid is a payor of last resort, and therefore, federal law requires state Medicaid agencies to seek reimbursement from liable third parties for medical costs improperly paid by Medicaid. Doc. 141, Mem. Op. & Order, 2–3. State Medicaid agencies contract with HMS to identify and liaise with such third-party sources of payment for reimbursement. *Id.* at 4. Plaintiff Frey alleges HMS failed to timely bill liable third parties and maintain up-to-date internal records, costing state Medicaid agency clients millions of dollars.

Following the Court's order denying HMS's Motion to Dismiss, both parties filed amended summary judgment motions. Doc. 159, HMS Am. Mot. Summ. J.; Doc. 167, Frey Am. Mot. Partial Summ. J. Accompanying their motions are several appendices. *See* Docs. 161–65, HMS App'xs; Doc. 169, Frey App'x. Frey filed a Motion for Leave to File Under Seal various exhibits within his appendices. Doc. 170, Frey Mot. Seal. The Court denied the motion. Doc. 177, Order. Because Frey's Motion only asserted the confidentiality interests of HMS, the Court permitted HMS to file a renewed motion to seal. Doc. 177, Mem. Op. & Order.

HMS filed a renewed motion, which the Court now considers. Doc. 188, HMS Mot. Seal. HMS now only seeks to seal Exhibit G in its entirety and file redactions to Exhibits H, I, J, and L of Frey's amended appendix.

## II.

## LEGAL STANDARD

The Fifth Circuit heavily disfavors the sealing of documents placed on the record because "the public's right of access to judicial records is a fundamental element of the rule of law." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (citation omitted). Maintaining transparency through public access to judicial records "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Id.* (citation omitted). "'The rationale for public access is even greater' where . . . the case 'involves matters of particularly public interest.'" *Id.* at 520 (quoting *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 233 (5th Cir. 2020); *see also Under Seal v. Under Seal*, 1994 WL 283977, at *2 (4th Cir. 1994) (unpublished) ("Courts have also recognized that when cases involve matters of particularly public interest, such as misspent government funds, the rationale for public access is even greater.").

Nonetheless, the public's common law right of access to judicial records "is not absolute." *Bradley*, 954 F.3d at 225.

Redacting can be preferable to sealing when the redactions are less restrictive on the public's right of access. *See United States v. Ahsani*, 76 F.4th 441, 453 (5th Cir. 2023) (recognizing redaction "is often practicable and appropriate as the least restrictive means of safeguarding sensitive information"). To decide whether to permit redactions, "the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *June Med. Servs.*, 22 F.4th at 521 (internal quotations omitted). Ultimately, "courts should be ungenerous with their discretion," and any necessary redaction must be "congruent to the need." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418, 420 (5th Cir. 2021).

**III.**

**ANALYSIS**

HMS no longer seeks to seal or redact Exhibits BB, E, K, M, N, or O. Doc. 188, HMS Mot. Seal, 3–4. Therefore, these exhibits should be unsealed because disclosure of these exhibits promotes the public's common law right of access. *See June Med. Servs.*, 22 F.4th at 521.

Next, HMS seeks to seal Exhibit G in its entirety and proposes various redactions to Exhibits H, I, J, and L on the grounds that the information contained therein is confidential, commercially sensitive, or irrelevant to the suit. Doc. 188, HMS Mot. Seal, 4–11. All Exhibits at issue are not yet on the public record and have been marked as "CONFIDENTIAL" pursuant to the Protective Order. *Id.* at 11. Frey does not dispute HMS's proposed seal and redactions. *Id.* at 13. That a sealing request is unopposed, however, does not alone satisfy a party's obligation to establish that its nondisclosure interests overcome the public's interest in accessing information in

the judicial record. *June Med. Servs.*, 22 F.4th at 521. Accordingly, the Court balances these competing interests with respect to each exhibit.

A. *Exhibit* G

Exhibit G is a "chart showing the status of various issues with insurance carriers, and HMS's internal strategies for resolving them." Doc. 188, HMS Mot. Seal, 4; *see* Doc. 170-1, Frey App'x, 71–73. HMS seeks to seal Exhibit G in its entirety, arguing that the information contained in the chart is confidential and commercially sensitive. Doc. 188, HMS Mot. Seal, 4–6. While HMS makes compelling arguments for certain columns within Exhibit G, its limited nondisclosure interest does not justify HMS's request to seal the Exhibit in its entirety. *See Binh Hoa Le*, 990 F.3d at 419–20. Given the Court's preference for redaction over sealing, when feasible, the Court finds narrower redactions are sufficient to protect HMS's interests. *See Ahsani*, 76 F.4th at 453.

1. Carrier, Issues, and Status Columns

HMS makes persuasive arguments for redacting the "Carrier," "Issues," and "Status" columns. HMS asserts the "Carrier" column of Exhibit G's chart displays specific carrier names "with which HMS identified and negotiated contracts to provide data eligibility information for Medicaid beneficiaries." Doc. 188, HMS Mot. Seal, 4. HMS contends the list of carriers compiled in Exhibit G is similar to "a confidential customer list," built through years of work and at the expense of significant resources. *Id.* at 5. According to HMS, its carrier list "is one of the most important competitive aspects of its business." *Id.* at 4–5. Therefore, HMS argues, access to the list would provide competitors with the unfair advantage of identifying and targeting HMS's carriers without expending resources to obtain the same. *Id.* at 5.

The information included in the "Issues" and "Status" columns show "specific issues" with particular carriers alongside "HMS's strategies to resolve those issues." *Id.* HMS argues that

disclosure of this information would provide an unfair competitive advantage because "a competitor could easily adopt HMS's strategies" regarding carrier relations, thereby undermining the market advantage HMS has expended time and resources to build. *Id.*

While courts "should be ungenerous" in redacting or sealing information from the public, *Binh Hoa Le*, 990 F.3d at 418, the public's right of access is "not absolute." *Bradley*, 954 F.3d at 225. The Court notes the names, related issues and strategies for specific carriers here do not provide a basis for summary judgment, diminishing the importance of public access as to this information. *MIECO LLC v. Pioneer Nat. Res., USA, Inc.*, No. 3:21-CV-1781-B, 2022 WL 18034481, at *2 (N.D. Tex. Oct. 28, 2022) (Boyle, J.) (citing *Binh Hoa Le*, 990 F.3d at 420). Further, the Court does not find a significant public interest in the specific carrier names, issue with those carriers, or strategies for resolving issues with those carriers. Therefore, the threat of unfair competitive advantage outweighs the public's minimal interest in the "Carrier," "Issues," and "Status" columns.

2. Remaining Columns

HMS's arguments concerning the remaining eleven columns, however, do not outweigh the public's interest in accessing the judicial record. *See June Med. Servs.*, 22 F.4th at 521. Regarding the "YM Notes" and "Dollar Value" columns, HMS asserts a generalized argument that this information could be "misused" by competitors or "misunderstood" by clients, ultimately harming HMS. Doc. 188, HMS Mot. Seal, 5–6. "[C]ourts will seal records containing detailed confidential business information where the parties articulate a concrete, non-speculative harm" that would result from disclosure. *Grano v. Sodexo Mgmt., Inc.*, No. 18-cv-1818-RSH-BLM, 2022 WL 3371621, at *2 (S.D. Cal. Aug. 16, 2022); *accord Vantage Health Plan v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 451–52 (5th Cir. 2019). The Court cannot accept HMS's bare assertion that disclosure of

these columns would be harmful because it invites potential misinterpretation. HMS's reasoning is too attenuated and the harm is too speculative to justify redaction in light of the narrower redaction already permitted for Exhibit G. *See Grano*, 2022 WL 3371621, at *2.

With respect to the "Accept %," "HMS Fee %," and "Revenue to HMS" columns, HMS argues the information reflected therein is "not an issue in this case." Doc. 188, HMS Mot. Seal, 6. However, HMS fails to explain why the columns are irrelevant or why they do not impact the public's right of access. *Cf. Bradley*, 954 F.3d at 225–28; *see also* Doc. 198, Mem. Op. & Order, 6–7 (rejecting HMS's motion to seal an email conversation for a similar "blanket assertion" of irrelevance). Therefore, the Court cannot credit on HMS's unsupported assertion of irrelevance and fully seal the information in these columns.

Finally, HMS does not claim confidentiality or commercial sensitivity for the remaining six columns. Instead, it argues the remaining columns "provide no meaningful information" when the rest of the columns are not disclosed. Doc. 188, HMS Mot. Seal, 6. As previously stated, the Court generally refuses to allow blanket assertions of irrelevance to justify sealing. *See* Doc. 198, Mem. Op. & Order, 6–7. The Court sees no reason why the remaining six columns should be withheld from the public, as opposed to furthering the public's interest in accessing judicial documents.

Limiting redactions in Exhibit G to the "Carrier," "Issues," and "Status" columns is sufficiently tailored to the nondisclosure interest asserted in this case because the redactions effectively shield HMS's internal business strategies and relationships from competitors while respecting the public's right to access the remaining columns of information. *See Binh Hoa Le*, 990 F.3d at 419–20. The remaining columns will not be traceable to specific carriers, protecting HMS's interests. Additionally, the Court's redaction minimizes any threat to HMS's reputational harm. Having engaged in "line-by-line balancing" of the interests, the Court finds that the requested

redactions for the "Carrier," "Issues," and "Status" columns are warranted. *June Med. Servs.*, 22 F.4th at 521.

B. *Exhibit H*

Exhibit H is a chart tracking the open claims HMS maintains with Pharmacy Benefit Managers ("PBMs") by state. Doc. 188, HMS Mot. Seal, 7; *see* Doc. 170, Frey App'x 74–75. HMS only seeks to redact the PBM data for non-Plaintiff states, leaving intact the PBM information pertaining to state agency claims that are germane to this suit. Doc. 188, HMS Mot. Seal, 7–8.

HMS has sufficiently shown that redacting PBM names is appropriate given HMS's interests in confidentiality and commercial sensitivity. Identification of the PBMs "is part of HMS's strategic and competitive edge . . . allow[ing] HMS to efficiently recover funds" from sources potentially unknown to competitors. *Id.* Having expended significant resources to cultivate its PBM relationships, HMS contends that disclosure of the information in Exhibit H could prompt competitors not only to begin to use PBMs "as potential sources for [third-party liability] pharmacy payments" but also to mirror HMS's PBM list. *Id.*

The Court also finds there is not a significant public interest in accessing names of PBMs in non-Plaintiff states. The names do not provide any basis for summary judgment and the information for relevant states—Oklahoma and New York—remain available. *See Binh Hoa Le*, 990 F.3d at 420, n.41. Therefore, the tailored redaction is "congruent to the need" for nondisclosure asserted by HMS. *Id.* at 420–21. After balancing the interests, the Court concludes the requested redaction is warranted.

C. *Exhibit I*

Exhibit I is a five-page email chain discussing HMS's business plans and practices. *See* Doc. 170-1, Frey App'x, 76–81. HMS seeks to redact the entire email chain aside from four sentences

regarding new action codes. Doc. 188, HMS Mot. Seal, 8–9; Doc. 170, Frey App'x, 81. HMS argues the email thread included in Exhibit I constitutes "a playbook for how to do business like HMS." Doc. 188, HMS Mot. Seal, 8. "A party's interest in sealing information that competitors would use to its disadvantage can overcome the public's right to access judicial records." *Ironshore Specialty Ins. Co. v. Facility IMS, LLC*, No. 3:23-CV-00296-K, 2023 WL 6850006, at *11 (N.D. Tex. Oct. 17, 2023) (Kinkeade, J.) (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978)). It is the Court's duty to scrutinize whether information alleged to be commercially sensitive in fact poses "a specific threat of competitive harm" to justify sealing. *Vantage Health Plan*, 913 F.3d at 451.

While HMS adequately justifies the redaction of certain portions of Exhibit I, redacting other categories of information here is not warranted when balanced against the public's right of access to judicial records.

1. Carrier Names

The Court previously recognized that HMS's carrier names collected in the course of business are commercially sensitive, and therefore warrant redaction from the record. Doc. 198, Mem. Op. & Order, 4–5 (granting the redaction of insurance carrier names in Exhibit E). Consistent with the Court's prior order, the redaction of the carrier names in Exhibit I is warranted.

2. Status of Business Metric and Processes

Exhibit I also references industry-specific business processes as well as general business practices. *See* Doc. 170-1, Frey App'x, 76–81. The status of industry-specific processes relate to HMS's strategies for increasing third-party liability recoveries, while the general business metrics referenced are akin to what one would expect to see tracked in some form by businesses across many industries.

HMS's tracking of general business processes does not possess a character of commercial sensitivity because such tracking does not pose a "specific threat of competitive harm." *Ironshore Specialty*, 2023 WL 6850006, at *11; *accord Vantage Health Plan*, 913 F.3d at 451. In addition, given the age of the email chain, HMS's asserted interest in protecting general business information is relatively weak. Exhibit I is over thirteen years old, and HMS has not presented any evidence to show why the general business metrics and processes referenced in the email chain are still commercially sensitive today. *See Ironshore Specialty*, 2023 WL 6850006, at *12 (refusing to seal an email exchange that was "a decade old"). Therefore, the redaction of such information is not congruent to the need for nondisclosure when balanced against the public right of access. *See Binh Hoa Le*, 990 F.3d at 419–20; *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015).

While Exhibit I's industry-specific business processes are also thirteen years old, the Court finds a relatively strong non-disclosure interest in redacting those processes because they have the greatest potential to be used by HMS's competitors to HMS's disadvantage. The nature of industry-specific information poses a more targeted threat of "allowing competitors an inside look" at the core of HMS's business. *See Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, No. 1:11-CV-871, 2017 WL 4168290, at *2 (S.D. Ohio Sept. 20, 2017). When balanced against the public's interest, the nondisclosure interest of Exhibit E's industry-specific business processes is slightly greater, and thus redaction is warranted.

3. References to Plaintiff-States and Provider

Exhibit I also references Plaintiff States New York and Florida, as well as a provider explicitly at issue in this case, Aetna. Doc. 188, HMS Mot. Seal, 8. References to Plaintiff States are relevant to the case, suggesting a strong public interest in disclosure. These references cannot

be blocked by HMS's requested blanket redaction because the interest in disclosure is of heightened significance in cases "involv[ing] matters of particularly public interest," such as qui tam cases where "misspent federal funds are at issue." *See June Med. Servs.*, 22 F.4th at 520 (citation omitted); *Under Seal*, 1994 WL 283977, at *2. References to Plaintiff States clearly relate to the Relator's central contention: that HMS allegedly failed to timely recover Medicaid funding from third parties. *See, e.g.*, Doc. 168, Relator's Am. Mot. Partial Summ. J., 1–2. Therefore, the public's interest weighs heavily in favor of keeping such references publicly accessible.

Information relating to Aetna, as HMS has acknowledged, is relevant to this lawsuit and has been ordered to remain accessible to the public in other exhibits. *See* Doc. 188, Mot. Seal, 10–11. In the pursuit of consistency and ensuring the public's interest in disclosure, the Court concludes that all information in Exhibit I pertaining to Aetna should remain publicly accessible.

After engaging in a "line-by-line" analysis of Exhibit I, the Court concludes HMS's request is overbroad and narrower redactions are warranted. *June Med. Servs.*, 22 F.4th at 521.

*D. Exhibit J*

Exhibit J is an email chain discussing HMS's open claims that are older than three years. *See* Doc. 170, Frey App'x, 82–97. HMS seeks to redact the carrier names and corresponding identification codes from Exhibit J. Doc. 188, HMS Mot. Seal, 9. HMS relies on the same reasoning it articulated to redact carrier names in Exhibit G. *Id.* at 4–5, 9. For the same reasons the Court permitted redaction in Exhibit G, the Court concludes the requested redaction here is warranted.

*E. Exhibit L*

HMS seeks to redact almost all of an internal quarterly status report for the State of Florida, except for information regarding Aetna. Doc. 188, HMS Mot. Seal, 10; Doc. 177-1, HMS Mot. Seal, 104–120. While the internal report relates to a Plaintiff State, HMS nonetheless argues the

report should be redacted almost entirely because it is confidential, commercially sensitive, and irrelevant to the parties' summary judgment motions. *Id.* Specifically, HMS asserts the internal report contains "carrier names and pay rates," "specific issues with specific carriers," and "internal strategies" as to those carriers. *Id.* According to HMS, disclosure of this information would allow competitors to replicate HMS's strategies "to address their own issues" or "undercut HMS without spending the time or resources" to independently cultivate the information. *Id.*

The requested redaction poses a close call. The information unrelated to Aetna is over thirteen years old, which suggests that any competitive threat may be stale. On the other hand, the internal report overwhelmingly contains industry-specific, rather than general, business information that is focused on a topic that the Court has previously found to warrant redaction. In addition, HMS represents to the Court that the parties "do not address or otherwise rely" on the internal report. *Id.* Upon a careful review of Exhibit J and a balancing of interests, the Court concludes the requested redaction is warranted. *See Binh Hoa Le*, 990 F.3d at 420.

**IV.**

**CONCLUSION**

For the foregoing reasons, HMS's Motion to Seal Certain Exhibits Submitted with Relator's Amended Motion for Partial Summary Judgment is **GRANTED IN PART and DENIED IN PART.** It is **ORDERED** that within three (3) business days of this Order,

- The Clerk of the Court unseal HMS's Exhibit BB to HMS's Amended Motion for Summary Judgment (Doc. 166, HMS App'x 628–35) and unseal Frey's Exhibits E, K, M, N, and O to Frey's Amended Motion for Partial Summary Judgment (Doc. 170-1, Frey App'x, 52–62, 98–103, 121–28);

- The Clerk of Court file the redacted copies of Exhibit H, Exhibit J, and Exhibit L as contained in Doc. 189, HMS App'x, Exhibits 3a, 5a, and 6a. The unredacted versions of the exhibits (Doc. 189, HMS App'x, Exhibits 3b, 5b, and 6b) shall remain under seal.

- HMS must redact and file Exhibits G and I as follows:

(1) HMS shall redact from Exhibit G the information contained in the columns labeled "Carrier," "Issues," and "Status," leaving the headings for those columns unredacted. All other columns in the chart contained in Exhibit G shall be left unredacted.

(2) HMS shall leave unredacted all twenty-one numbered headings of Exhibit I and implement the following redactions:

(a) HMS shall redact all information under headings 7, 8, 10, 14, 17, 18, and 19 of the email chain.

(b) HMS shall redact the information under heading 5, except mention of Aetna and associated date.

(c) HMS shall follow its proposed redactions under heading 6.

(d) HMS shall redact the information under heading 9, except the sub-category title and information regarding "EDI status."

(e) HMS shall redact the information under heading 11, except information regarding New York.

(f) HMS shall redact the information under heading 15, except the lines regarding Aetna and a "NY run."

(g) HMS shall redact the information under heading 16, except lines regarding to Florida and New York.

(h) HMS shall redact the information under heading 21 as proposed in Doc. 189, HMS App'x.

(3) All other information in Exhibit I shall remain unredacted.

**SO ORDERED.**

**SIGNED: December 13, 2023.**

**JANE J. BOYLE**
**UNITED STATES DISTRICT JUDGE**