UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. CHRISTOPHER FREY, | § § § § § | |
| Plaintiff/Relator, | | |
| v. | § | CIVIL ACTION NO. 3:19-CV-0920-B |
| HEALTH MANAGEMENT SYSTEMS, INC., | § § § § § | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Relator Christopher Frey's Motion for Leave to File Under Seal Appendix Exhibit B to its Summary Judgment Briefing (Doc. 195).[1] Having reviewed the documents in question and Defendant Health Management Systems, Inc. (HMS")'s asserted interests in sealing, the Court **DENIES** the Motion.

## I.

## BACKGROUND

At its core, this *qui tam* case concerns the adequacy of HMS's third-party liability services for state Medicaid agencies.[2] Medicaid is a payor of last resort, and therefore, federal law requires state Medicaid agencies to seek reimbursement from liable third parties for medical costs improperly paid by Medicaid. Doc. 141, Mem. Op. & Order, 2–3. State Medicaid agencies liase with HMS to identify such third-party sources for reimbursement. *Id.* Plaintiff Frey alleges HMS failed to timely bill liable

---

[1] The title of the motion has been shortened for clarity.
[2] A more fulsome explanation of the factual background can be found in this Court's May 2, 2023 Memorandum Opinion & Order denying Defendant's Motion to Dismiss for Lack of Jurisdiction. Doc. 141, Mem. Op. & Order, 2-7.

third parties and maintain up-to-date internal records of third parties, costing its state Medicaid agency clients millions of dollars.

In the instant Motion, both parties seek leave to file one exhibit—Exhibit B—under seal or with limited redactions. *Compare* Doc. 195, Frey Mot. Seal, *with* Doc. 199, HMS Resp. Exhibit B was submitted by Frey as part of an Appendix (Doc. 194) to his Reply in Support of an Amended Motion for Partial Summary Judgment. Doc. 201, Frey Reply, ¶¶ 2–3. Exhibit B consists of 32 invoices HMS sent to its client, the Oklahoma Health Care Authority ("OCHA"). Doc. 195, Ex. B, 4–8; *accord* Doc. 199, HMS Resp., ¶ 3. Information from Exhibit B was compiled by Frey and used to create Exhibit N, a document submitted in support of Frey's Amended Motion for Partial Summary Judgment.[3] *See* Doc. 201, Frey Reply, ¶ 2. According to Frey, Exhibit N illustrates an increase in third-party liability ("TPL") recoveries for the state of Oklahoma over a three-year period. *See* Doc. 201, Mot. Seal, ¶ 2. The figures reflected in Exhibit B were submitted to "substantiate the Oklahoma TPL recovery figures reflected in Exhibit N." *Id.* Exhibit B is not yet on the public record and has been marked as "CONFIDENTIAL" pursuant to the parties' protective order. Doc. 199, HMS Resp., ¶ 14.

Frey moves for leave to file Exhibit B under seal in its entirety. Doc. 195, Frey Mot. Seal. However, Frey makes it clear that he has filed this Motion only "to respect the confidentiality of information contained in the Exhibit that, as HMS has informed the Relator, is confidential." *Id.* ¶ 2. In response to Frey's Motion, HMS reiterates the confidential nature of Exhibit B, but makes an

---

[3] In its Response to Frey's Motion to Seal, HMS also objects to the admission of Exhibit N and Exhibit B given that it was improperly submitted for the first time in the reply stage of a motion proceeding. Doc. 199, Resp., ¶ 4. In his Reply, Frey argues that evidence submitted with a reply is warranted under "limited circumstances" applicable here. Doc. 201, Frey Reply, ¶ 5. To the extent that HMS seeks to exclude Exhibits N and B, the parties can engage in separate motion practice.

alternative request that the 32 invoices be sealed "*in part* via limited redactions." Doc. 199, HMS Resp., ¶ 4. Because HMS's confidentiality interests, not Frey's, are ultimately at issue, the Court will treat the Motion as essentially filed by HMS.

## II.

## LEGAL STANDARD

The Fifth Circuit heavily disfavors sealing documents placed on the record because "the public's right of access to judicial records is a fundamental element of the rule of law." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (citation and alteration omitted). Maintaining transparency through public access to judicial records "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Id.* (citation omitted). Thus, the common law "establishes a presumption of public access to judicial records." *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 225 (5th Cir. 2020) (citation omitted).

"'The rationale for public access is even greater' where . . . the case 'involves matters of particularly public interest.'" *June Med. Servs.*, 22 F.4th at 520 (quoting *Bradley*, 954 F.3d at 233); *see also Under seal v. Under seal*, 1994 WL 283977, at *2 (4th Cir. 1994) (unpublished) ("Courts have also recognized that when cases involve matters of particularly public interest, such as misspent government funds, the rationale for public access is even greater."). "The greater the public interest in the litigation's subject matter, the greater showing necessary to overcome the presumption of access." *June Med. Servs.*, 22 F.4th at 520 (quoting *Shane Grp. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)). Nonetheless, the public's common law right of access to judicial records "is not absolute." *Bradley*, 954 F.3d at 225.

Redacting can be preferable to sealing when the redactions are less restrictive on the public's right of access. *See United States v. Ahsani*, 76 F.4th 441, 453 (5th Cir. 2023) (recognizing redaction "is often practicable and appropriate as the least restrictive means of safeguarding sensitive information"). To decide whether to permit redactions, "the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *June Med. Servs.*, 22 F.4th at 521 (citation omitted). Ultimately, "courts should be ungenerous with their discretion," and any necessary redaction must be "congruent to the need." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418, 420 (5th Cir. 2021).

## III.

## ANALYSIS

As a preliminary matter, the Court does not find the asserted interest in non-disclosure justifies fully sealing Exhibit B in light of the fact that it touches upon matters of "particularly public interest" and is used to support a legal argument raised by Frey. *June Med. Servs.*, 22 F.4th at 520. In the alternative, HMS seeks to redact two categories of information contained in Exhibit B—the contingency fee rate and the flat fee rate that HMS charged its state client OCHA—on the grounds that this information is confidential, commercially sensitive, and irrelevant to the suit. Doc. 199, HMS Resp. Mot. Seal, ¶¶ 10–11. HMS contends that both the contingency fee rate and the flat fee rate are "confidential and inherently competitive in nature" because a competitor with this information could craft its next proposal to OCHA "to undercut HMS's rates and outbid HMS." *Id.* ¶ 10. In support of its commercial sensitivity claim, HMS asserts that OCHA's 2010 Solicitation for Proposals instructed contractors submitting proposals to "use a sealed envelope" and "ensure all pricing details are separate from the rest of the written proposal." *Id.*

"A party's interest in sealing information that competitors would use to its disadvantage can overcome the public's right to access judicial records." *Ironshore Specialty Ins. Co. v. Facility IMS, LLC*, No. 3:23-CV-00296-K, 2023 WL 6850006, at *11 (N.D. Tex. Oct. 17, 2023) (Kinkeade, J.) (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978)). However, it is the Court's duty to scrutinize whether information alleged to be commercially sensitive in fact poses "a specific threat of competitive harm" to justify sealing. *Vantage Health Plan v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 451 (5th Cir. 2019). "[C]ourts will seal records containing detailed confidential business information where the parties articulate a concrete, non-speculative harm" that would result from disclosure. *Grano v. Sodexo Mgmt., Inc.*, No. 18-cv-1818-RSH-BLM, 2022 WL 3371621, at *2 (S.D. Cal. Aug. 16, 2022); *accord Vantage Health Plan*, 913 F.3d at 451–52.

The Court is not persuaded by HMS's asserted interest in protecting the specific fee rates charged to OCHA. First, the age of the documents undercuts HMS's non-disclosure interests. The most recent fee rates reflected in Exhibit B are nearly thirteen years old, and HMS has not presented any evidence showing how the fee rates maintain "a character of commercial sensitivity" today. *See Ironshore Specialty*, 2023 WL 6850006, at *12 (refusing to seal an email exchange that was "a decade old"). For example, HMS has not shown that OCHA maintains the same bidding processes as it did in 2010. *See id.* Second, and perhaps more problematically, OCHA's TPL Solicitation paperwork from 2010 does little to bolster HMS's commercial sensitivity argument. HMS fails to explain *how* OCHA's TPL Solicitation process, requiring contractors to submit bids in a sealed envelope separate from their written proposal, leads to a conclusion that such information is "confidential and inherently competitive in nature." Doc. 199, HMS Resp., ¶ 10. There are no facts enabling the Court to determine whether the invoice rates in Exhibit B match the pricing in the sealed bid HMS

placed in the 2010 Solicitation, or whether the information in Exhibit B could even be traced back to the 2010 Solicitation given that the invoices cover a three-year period between 2009–2011. *See id.* Consequently, the Court does not find that HMS's fee rates as reflected in Exhibit B pose "a specific threat of competitive harm" justifying non-disclosure. *See Vantage Health Plan*, 913 F.3d at 451.

Besides its commercial sensitivity argument, HMS asserts that the fee rates are irrelevant to the suit and are therefore "not information in which the public has a great degree of interest." Doc. 199, HMS Resp., ¶ 15. Because the basis of Frey's claim involves "trends in total net recoveries," rather than the contingency and flat fee rates applied to TPL collections, HMS asserts that the information is "not pertinent to the claims being made in this case." *Id.* ¶ 11. But the Court cannot simply rely on one party's word that information is irrelevant especially when the content is expressly used to support a party's summary judgment motion. Doc. 195, Mot. Seal, ¶ 2 ("Relator seeks to seal the one Exhibit to his Appendix in Support of his Reply in Support of his Amended Motion for Partial Judgment.").

HMS cites in support of its irrelevance argument, *MIECO LLC v. Pioneer Nat. Res., USA, Inc.*, No. 3:21-CV-1781-B, 2022 WL 18034481 (N.D. Tex. Oct. 28, 2022) (Boyle, J.). But that case is factually distinct. In *MIECO*, this Court granted a motion to seal documents exposing the plaintiff's confidential third-party contracts, which included the third parties' contractual terms. 2022 WL 18034481 at *2. There, the Court explained the public's right of access was limited because the contracts were merely between the plaintiff and third parties, and the information did not form the basis of the relief sought. *Id.* Here, the invoices pertain to HMS's transactions with a third party. However, unlike in *MIECO*, the third party is a case-pertinent state entity and the transactions concern HMS's alleged failure to recover Medicaid funding improperly paid by the state entity. *See,*

*e.g.*, Doc. 168, Frey's Am. Mot. Partial Summ. J., 1–2.

Additionally, Exhibit B's contents suggest a strong public interest in disclosure. The upward trend in fees charged to OCHA parallels the upward trend in total net recoveries, which is raised by Frey.[4] *See* Doc. 193, Frey Reply Mot. Summ. J., 4–5 (referring to Exhibit N as "showing that HMS's collections for the State of Oklahoma increased more than six times from May 2009 . . . to September 2009."). The proposed redaction of fees relates directly to the government funds of a state client. *See* Doc. 199, HMS Resp., ¶ 10. The increase in fees charged to OCHA, during the same period in which HMS is alleged to have "bill[ed] TPL claims for only a fraction of Oklahoma's Medicaid population," raises questions regarding the spending of public funds. Doc. 201, Frey Reply, ¶ 2. Thus, it is difficult to agree with HMS's bald assertion that such information lacks public interest. *See Under Seal*, 1994 WL 283977, at *2 (recognizing that "when cases involve matters of particularly public interest, such as misspent government funds, the rationale for public access is even greater.").

Public access to judicial documents is an important responsibility entrusted to courts because such public accessibility enhances the legitimacy of the judiciary and judicial orders. *See Binh Hoa Le*, 990 F.3d at 417. The sealing of judicial records "must be justified and weighed against the presumption of openness." *Id.* at 421. HMS's weak commercial need for limited redactions is heavily outweighed by the public interest in information implicating a state agency and government funds. Based on a "line-by-line" review of Exhibit B, the Court concludes that the balance of interests favors the public. *Id.*; *June Med. Servs.*, 22 F.4th at 521.

---

[4] In Frey's Motion to Seal Exhibit B in its entirety, Frey asserts that he does not "seek to seal any portion of his argument." Doc. 195, Frey Mot. Seal, ¶ 7. However, Frey used the net recovery figures and dates in Exhibit B to compile Exhibit N, a document submitted as an Appendix in support of his Amended Motion for Partial Summary Judgment. Doc. 201, Frey Reply, ¶ 2. Thus, the net recovery figures form a basis of the relief sought. *See MIECO LLC v. Pioneer Nat. Res.*, USA, Inc., No. 3:21-CV-1781-B, 2022 WL 18034481, at *2 (N.D. Tex. Oct. 28, 2022) (Boyle J.).

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Frey's Motion for Leave to File Under Seal (Doc. 195) and HMS's Response to Motion for Leave to File Under Seal (Doc. 199). The Clerk is directed to unseal Doc. 195.

**SO ORDERED.**

**SIGNED: March 27, 2024.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE